380 So.2d 19 (1980)
STATE of Louisiana
v.
Rodney O. EAKER.
No. 65152.
Supreme Court of Louisiana.
January 28, 1980.
Rehearing Denied March 3, 1980.
*21 Hewitt B. Johnson, Don H. Johnson, J. Eugene Osburn, Neal G. Johnson, Johnson, Johnson, Osburn & Johnson, Monroe, for defendant-appellant.
*22 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Johnny C. Parkerson, Dist. Atty., Lee E. Ineichen, Jr., Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
Shortly after midnight on June 20, 1977, Deputy Ray Cook of the Ouachita Parish Sheriff's Department, received a telephone call from Ms. Pat Branch, asking that he come to her home at once. Present in Ms. Branch's residence upon the arrival of law enforcement officers were Ms. Branch and defendant Rodney Eaker. On the floor of the room in which these two were sitting was the body of Harry Davis, the victim of two bullet wounds to the body and two to the head. On July 7, 1977, an affidavit was filed charging both Eaker and Branch with the second degree murder of Davis. On March 30, 1978, a grand jury indictment for first degree murder was filed against Eaker. Eaker was found guilty of murder in the first degree and sentenced to life imprisonment without benefit of probation, parole or suspension of sentence. His motion for a new trial was denied. Twenty-one errors were assigned, of which eleven are urged on appeal to this court.
Assignments of Error Nos. 1, 2, 3, 4 and 5
During the pretrial phase of this proceeding, defense counsel made repeated requests upon the district attorney's office for discovery of statements made by Ms. Branch to law enforcement officers and to two grand juries.[1] The discovery motions were based on C.Cr.P. 722, which provides:
"Upon motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect and copy, photograph or otherwise reproduce any relevant written or recorded confessions or inculpatory statements made by a codefendant and intended for use at trial. Exculpatory evidence shall be produced under this article even though it is not intended for use at trial."
At hearings on defendant's subsequent motions to compel discovery, held shortly before trial and almost a year after the filing of the affidavit, the state contended that discovery was not available because Branch was not a codefendant. The state also claimed that it had decided, shortly before these hearings, to "decline charges" against Branch because of insufficient evidence,[2] but that the sheriff's office had failed to file the state's document dismissing the charge. At the second of the hearings held on this issue, the trial court permitted the state to dismiss the affidavit orally in open court, in conformity with the procedures for dismissal of prosecution provided by C.Cr.P. 691, and denied defendant access to any of Ms. Branch's statements. This court denied defendant's application for a stay order and for writs of review of this ruling. State v. Eaker, 359 So.2d 623 (La.1978).
In these assignments of error, defendant contends that the trial court erred in permitting the state to dismiss the affidavit against Ms. Branch[3] and in denying defendant access to her statements. With *23 regard to the district attorney's power to dismiss a prosecution, C.Cr.P. 691 provides:
"The district attorney has the power, in his discretion, to dismiss an indictment or a count in an indictment, and in order to exercise that power it is not necessary that he obtain consent of the court. The dismissal may be made orally by the district attorney in open court, or by a written statement of the dismissal signed by the district attorney and filed with the clerk of court. The clerk of court shall cause the dismissal to be entered on the minutes of the court."
This court has held that the district attorney's power to dismiss extends to bills of information and to affidavits charging violations of city ordinances. State v. Franton, 319 So.2d 405 (La.1975); City of Lake Charles v. Anderson, 248 La. 787, 182 So.2d 70 (1966). Dismissal of the affidavit was therefore a proper exercise of the district attorney's discretion.
It is also defendant's contention that, even if the affidavit was properly dismissed shortly before trial, Ms. Branch was a codefendant at the time of his motions for discovery. The state argues, on the other hand, that because a prosecution for an offense punishable by death or life imprisonment must be instituted by grand jury indictment under the provisions of C.Cr.P. 382, Ms. Branch did not become a codefendant by the mere filing of the affidavit. The definition of the term "defendant" to be used in the Code of Criminal Procedure, unless the context clearly indicates otherwise, is provided by article 934(4) which states: "`Defendant' means a person who has been charged with or accused of an offense." The Official Revision Comment to this section notes that "(d) `Defendant' is broadly defined so as to include a person `accused' of an offense, even though he is not, as yet, officially charged." It should also be noted that an indictment or the filing of a bill of information are, under C.Cr.P. 382, necessary prerequisites to the institution of prosecution, but not to merely charging an individual with or accusing him of an offense. The purpose of an indictment or information is to inform the accused and the court so that the defense can be prepared, the evidence can be regulated, and a plea of former jeopardy can be supported in the event of another trial. State v. Meunier, 354 So.2d 535 (La.1978); State v. Edwards, 287 So.2d 518 (La.1973); State v. Glover, 262 La. 495, 263 So.2d 866 (1972). These purposes would in no way be furthered by restricting the meaning of the term "defendant" to one against whom an indictment or bill of information has been filed, in the context of pretrial discovery.[4] The purposes of the discovery statutes would be subverted by permitting the state to circumvent its statutory obligation by first denying that the person whose statements are requested is a codefendant and then dismissing the charges against that individual at a hearing on the defense motions. The state should have provided the defense with access to any of Ms. Branch's statements available under article 722, and the trial court erred in denying defendant's motions to compel discovery.
Once we have reached this conclusion, we must further determine whether the state's failure to disclose the requested statements constituted such a denial of defendant's rights to due process as to require us to reverse his conviction and remand for a new trial. In Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court held that due process is violated when the prosecution withholds evidence favorable to an accused which is material either to guilt or to punishment. In United States v. Agurs, 427 U.S. 97, 112-113, 96 S.Ct. 2392, 2401-2402, 49 L.Ed.2d 342, 343, 354-355 (1976), that court further delineated the concept of materiality:
"The proper standard of materiality must reflect our overriding concern with the *24 justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt."
In State v. May, 339 So.2d 764 (La.1976), defendant filed a motion for all exculpatory evidence under Brady, supra, and also specifically for a letter allegedly authored by a co-indictee. The prosecution's sole response was an assertion that it had no exculpatory evidence in its possession. Citing Agurs, supra, this court remanded the case for the trial court to determine whether the state had suppressed requested subject matter for which there was a substantial basis for claiming that materiality existed, and, if so, whether the material suppressed would, upon its evaluation in the context of the entire record, create a reasonable doubt as to defendant's guilt. See also, State v. Sheppard, 350 So.2d 615 (La.1977); State v. Williams, 349 So.2d 286 (La.1977).
In the instant case, the record shows that Eaker admitted shooting the victim but introduced evidence tending to show that the homicide was justified because it was committed in self-defense, under R.S. 14:20, or in the defense of another person, R.S. 14:22.[5] Ms. Branch, whose pretrial statements are at issue here, appeared at trial as a witness for the defense, not for the prosecution. Her testimony corroborated all of the other evidence introduced by Eaker to show that the homicide was justified, but she also testified, as did Eaker himself, that she was not a witness to the actual shootings. Her pretrial statements were used by the state for impeachment purposes only once during the trial: to show that she had once stated that the victim went outside, that she heard a shot, and that she was unable to tell whether the shot came from in front of him or from behind him.[6]
It appears, then, that Ms. Branch's pretrial statements could not have created any greater doubt as to the justification for the homicide than did her testimony at trial or any of the other evidence introduced by the defense on this issue. Remanding the case to the trial court for inspection of her statements would therefore serve no purpose. Because the trial court's error in denying defendant's motion to compel production of her statements was not prejudicial to the defendant, these assignments of error are without merit.
Assignment of Error No. 7
In this assignment of error, defendant contends that the trial court erred in denying his challenges for cause of three jurors, Gunther, Spurgeon and Merriweather.[7]
*25 Defendant used two of his twelve peremptory challenges to excuse Gunther and Spurgeon. He accepted Merriweather initially, although Merriweather stated on voir dire that he was an acquaintance of Deputy Cook, who was to testify during the trial. After twelve jurors, including Merriweather, had been sworn, voir dire of Merriweather was reopened when he volunteered the additional information that he had a nephew who worked in the Ouachita Parish Sheriff's Department. At this point defendant, who had used all twelve of his peremptory challenges, attempted to re-examine Merriweather about his involvement with law enforcement personnel and activities, and challenged him for cause. This challenge was denied, and Merriweather subsequently was elected foreman of the jury.
Defendant's challenge for cause of Mr. Gunther was based on his expression of extreme reservations concerning the possibility that the taking of a human life might ever be justified, the defense to be offered at trial. But after the trial judge instructed Gunther on the law of justifiable homicide, Gunther stated that he could accept the law without reservation and that he would approach the determination of defendant's guilt or innocence with a fair and impartial state of mind. Mr. Spurgeon stated initially that he would tend to find the testimony of a law enforcement officer more credible than that of a lay witness, and that he had formed some idea of the facts of the case from earlier conversations concerning the incident. Again, however, following the court's instructions as to impartiality and the obligation to determine guilt or innocence solely on the basis of the evidence presented at trial, this prospective juror stated that he could act in conformity with these instructions. It appears, then, that both jurors were rehabilitated and that these challenges for cause were properly denied. State v. Webb, 364 So.2d 984 (La. 1978); State v. Demouchet, 353 So.2d 1025 (La.1977); State v. George, 346 So.2d 694 (La.1977).
With regard to Mr. Merriweather, defendant argues that the trial court erred in limiting his second voir dire to any partiality caused by the fact that Merriweather's nephew was a member of the sheriff's department, and in failing to sustain the challenge for cause on the ground of Merriweather's acquaintance with Deputy Cook. In response to defendant's first contention, we note that the trial court reopened voir dire of Merriweather specifically for the sole purpose of investigating the relationship which Merriweather revealed after he was sworn as a juror. In response to the second contention, we note that the nature of Merriweather's association with Deputy Cook was fully explored on the initial voir dire examination, after which the defense accepted Merriweather as a juror.
This assignment of error is without merit.
Assignment of Error No. 10
Defendant here alleges that the trial court erred in denying him full, adequate and effective cross-examination of Deputy Cook with reference to inconsistencies between the content of a tape recorded statement made by the defendant and introduced by the state, and Cook's testimony about the content of a prior unrecorded statement made by defendant. At a hearing to determine the voluntary nature of these statements, held out of the jury's presence, Cook said that the defendant made an unrecorded statement that he had fired one of the four shots at the victim "because he wanted to get him out of his misery (and) he couldn't stand to see him suffer." Later, when questioned by the prosecution, regarding the same unrecorded *26 statement, in the presence of the jury, Cook replied: "He said he had always heard if you shoot somebody outside you are suppose (sic) to bring them back inside and there is another one that he made butgosh, I can't remember right offhand but we sat and talked for a little while." A few minutes later, Cook recalled the statement he had previously forgotten as: "That when he drug him back inside that he couldn't stand to see him suffer. So he shot him again twice, I believe." After the jury heard defendant's tape recorded statement (the gist of which, on the points at issue, was that Eaker had pulled the victim back into the house either to call for police assistance or to keep him away from his car, and that he had fired the final shots to keep the victim from attacking him), the defense began to cross-examine Cook on all of these inconsistencies. The state objected to this line of questioning as "arguing with the witness" and, after a lengthy discussion before the bench, the court sustained the state's objection, noting that the inconsistent statements were largely those of the defendant himself, not of the witness, and that the defense would have ample opportunity to point out the inconsistencies during its closing argument to the jury.
While R.S. 15:280 provides that a witness may be cross-examined upon the whole case, R.S. 15:275 vests the trial judge "with a sound discretion to stop the prolonged, unnecessary and irrelevant examination of a witness, whether such examination be direct or cross, and even though no objection be urged by counsel." The trial court's rulings regarding the scope and extent of cross-examination will not be disturbed in the absence of an abuse of discretion. State v. George, 346 So.2d 694 (La. 1977); State v. Nero, 319 So.2d 303 (La. 1975); State v. Fulmer, 263 La. 971, 270 So.2d 116 (1972). In the situation under review here, the defense was able to indicate to the jury the inconsistencies in Cook's accounts of Eaker's unrecorded statement, before cross-examination was curtailed. The issue of Cook's credibility was therefore raised, and it was for the jury to weigh the recorded statement against the unrecorded statement. The judge did not abuse his discretion in sustaining the state's objection.
There is no merit in this assignment of error.
Assignment of Error No. 11
Defendant contends that the trial court erred in finding that his unrecorded and recorded statements were voluntarily made and in admitting them into evidence. At the hearings on voluntariness, both Deputy Cook and another deputy testified that defendant was given the Miranda warnings before he made the unrecorded statement and that he did not appear to be particularly nervous or upset. The defendant argues, however, that the inconsistencies in Cook's testimony about the content of this statement are proof of Cook's unreliability. The defendant also notes the following interchange between Cook and Eaker, shortly after Cook began to take Eaker's recorded statement:
Cook: "We've already gone over this a couple of times."
Eaker: "Did I talk to you?"
The defense argues that Eaker could not have intelligently and knowingly waived his rights before making the unrecorded statement, if he was incapable, a few minutes later, of remembering that he had made such a statement. Defendant's brief makes no mention of the fact that, on direct examination at trial, Eaker denied having made the unrecorded statement to Cook.
The voluntary nature of the recorded statement was again attested to by Deputy Cook and another deputy who testified that no threats or promises were made to defendant, and that Eaker appeared to be calm and to comprehend the nature of the proceedings. The waiver of rights form, read into the tape recording itself and acknowledged by Eaker in the recording, was signed by the defendant, Deputy Cook and the other deputy. At trial, Eaker admitted having given the recorded statement to the deputies and described it as "the real true feelings that I had at that time ..." Defendant's brief notes, however, that *27 when he was asked at the beginning of the statement whether he had been advised of his rights, he replied, "I guess so. I think so." He contends that this is evidence that he was unaware of his rights when he made the statement.
In order for a confession or inculpatory statement to be introduced into evidence in a criminal trial, the state must affirmatively show that it was voluntarily given and was not obtained through fear, duress, intimidation, menaces, threats, inducements, or promises. R.S. 15:451; State v. Hollingsworth, 337 So.2d 461 (La.1976). The trial court's conclusions as to the credibility and weight of the testimony relating to voluntariness will not be overturned unless they are not supported by the evidence. State v. Fowlkes, 352 So.2d 208 (La.1977). At the voluntariness hearings, the defense introduced no evidence to rebut the state's evidence of voluntariness or to show that Eaker was unable to understand the waiver of his rights because of his disturbed state of mind. The trial court's determination of voluntariness was correct, and this assignment of error is without merit.
Assignment of Error No. 16
In the course of Ms. Branch's testimony for the defense, the trial court sustained the state's objections to certain testimony regarding the victim's violent character. The defendant alleges that the trial court erred in failing to allow him to examine Ms. Branch adequately on this point. The record shows, however, that Ms. Branch was later permitted to testify about specific incidents evidencing the victim's dangerous character and about the defendant's knowledge of at least one of those incidents. Any error committed by the trial court in sustaining the state's objections did not prejudice the defendant, and this assignment of error is without merit.
Assignments of Error Nos. 20 and 21
These assignments of error concern this court's ruling in State v. Payton, 361 So.2d 866 (La.1978), an opinion rendered six days after the jury found Eaker guilty of first degree murder and recommended the sentence of life imprisonment. In Payton, we found that the 1977 amendment to the second degree murder statute, R.S. 14:30.1(B), defining one form of that offense as a killing with specific intent which would be first degree murder under R.S. 14:30 except for the absence of any of the aggravating circumstances provided by C.Cr.P. 905.4, amended the first degree murder statute, by implication, to require proof of at least one aggravating circumstance. We also found that the fact that an offense was committed in an especially heinous, atrocious, or cruel manner, C.Cr.P. 905.4(g), could not constitutionally form part of the definition of first degree murder. Defendant argues that the application of Payton to his conviction and sentence would warrant their reversal because the state attempted to prove that the crime was committed in an especially heinous manner.
Defendant's argument ignores the fact that the statutory definition of a criminal offense is an aspect of the substantive law, and that the substantive law to be applied in a criminal prosecution is that which was in effect on the date of the offense. The crime of which defendant was found guilty was committed on June 20, 1977, more than two months before the September 9, 1977 effective date of Acts 1977, No. 121, which contained the implicit amendment of the first degree murder statute found to be unconstitutional in part by Payton. On the date of this offense, first degree murder was defined as the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. The portion of the state's case to which defendant objects, i. e. the evidence that Eaker shot the victim twice in the head after he was already critically wounded, was included in order to show specific intent and to rebut the justification defense, not to show that the crime was committed in an especially heinous, atrocious, or cruel manner; this latter factor *28 was not an element of the first degree murder at that time.[8]
There is no merit in these assignments of error.
For the reasons assigned, the conviction and sentence are affirmed.
NOTES
[1] The defense also moved for a protective order to prohibit the state from dismissing the affidavit. This motion was properly denied. See C.Cr.P. 691, infra.
[2] On September 14, 1978, the state obtained a grand jury indictment charging Ms. Branch with first degree murder. When the trial court permitted the dismissal of the original affidavit, the state asked for a ruling on whether this constituted a declining of the charges, as the state contended, or a dismissal of the prosecution, as the court finally ruled. The state requested this ruling "because if the Court rules that the state dismissed its prosecution then we are limited by ... we have to re-file or file new charges within six months, otherwise we would be barred by the Code of Criminal Procedure." It appears, then, that the state's dismissal of the affidavit was not made in good faith, but rather for the sole purpose of denying defendant access to Ms. Branch's statements.
[3] Defendant contends that error was committed when the trial judge himself suggested to the prosecuting attorney that C.Cr.P. 691 would permit the oral dismissal of the affidavit in open court, a procedure promptly utilized by the state. But the record shows that it was counsel for the defense who first made reference to this provision of article 691, in a hearing held earlier on the day the affidavit was finally dismissed.
[4] In State v. Kimble, 375 So.2d 924 (La.1979), defendant moved for discovery of statements made by Miller, a co-participant in the offense who was never charged but with whom defendant had been incarcerated in a Mississippi county jail. Dennis, J., concurring, found that Miller was a codefendant within the meaning of C.Cr.P. 722.
[5] Included in the evidence introduced in support of this defense was testimony that the victim had a reputation for violence, that Ms. Branch had had previous difficulties with the victim and was afraid of him, that Ms. Branch summoned Eaker to her home on the night of the murder for protection against the victim, that the victim entered Ms. Branch's home on the night of the killing by breaking down the door, and that the victim acted violently toward Ms. Branch and threatened both her and Eaker before the shootings occurred.
[6] With regard to this alleged inconsistency, it should be noted that the state's evidence showed that at least some of the bullet wounds were inflicted on the victim while he was inside the house. Eaker himself testified that he shot the victim at least once while he was in the house, followed him outside to the end of the carport, pulled him back into the house, and then fired at least one shot into the victim's head.
[7] The relevant grounds for challenging a juror for cause are set forth in C.Cr.P. 797, which provides in pertinent part:

"The state or the defendant may challenge a juror for cause on the ground that:
. . . . .
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;
(4) The juror will not accept the law as given to him by the court; or ..."
[8] The record shows that the trial court's charge to the jury employed the definitions of first and second degree murder which did not become effective until after the date of this offense. No objection was made, however, so that this issue is not before us. We also note that this over sight could not have prejudiced the defendant. If the jury found him guilty of an offense which required both specific intent and an aggravating circumstance, it would certainly have found him guilty of an offense which required only specific intent.