GARRISON, Judge.
Leonard Montegut was charged on January 28, 1982 with the crime of possession of heroin with intent to distribute. After hearings on defendant’s motion to suppress the evidence on April 12, 1982 and motion to suppress the confession on April 29,1982, *1107 the matter was tried before a jury on August 3 and 4, 1982. The jury found the defendant guilty of simple possession of heroin. The defendant was sentenced on August 10,1982 to serve eight years at hard labor, with credit for time served. Defendant appeals that conviction.
Our review of the record in this case discloses the following facts. On August 18, 1981 pursuant to information received through an informant, members of the New Orleans Police Department’s Narcotics Division obtained a search warrant for 2808 Dumaine Street in New Orleans, the home of the defendant, Leonard Montegut. When officers arrived at the address Mr. Montegut refused to answer the door, so the officers forcibly entered the residence and informed the defendant of their warrant. The defendant became hostile and began “throwing a temper tantrum,” in the words of the officers, as a result of which he was removed from the residence and taken to the Narcotics office. While there the defendant complained of pain in his hip and was subsequently transported to Charity Hospital, where he was examined.
While the defendant was being examined at Charity, the transporting officers received a radio transmission that the officers conducting the search of Mr. Montegut’s residence had recovered eleven sealed plastic bags, which appeared to contain heroin, from a cabinet under the kitchen sink. The defendant was then taken back to his residence, placed under arrest and given his constitutional rights, which he stated he understood. As a result of the search, in addition to the heroin officers confiscated drug related paraphernalia, two guns and $961.00 in cash.
Defendant bases this appeal on alleged trial court error in the following respects: (1) In denying his motion to suppress the evidence; (2) In denying his motion to suppress the confession; (3) In overruling a defense objection to opinion testimony given by a police officer whose expertise had previously been stipulated.
SUPPRESSION OF THE EVIDENCE
Defendant’s first assignment of error specifies that the trial court erred when it denied his motion to suppress evidence, because the affidavit for the search warrant was insufficient to sustain a finding of probable cause.
To be sufficient under the law, an affidavit for a search warrant is required to meet a “two-pronged” test which was first jurisprudentially enunciated in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. U.S., 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), and which has been applied by the Supreme Court of this state in State v. Jeffcoat, 403 So.2d 1227 (La.1981) and State v. Hernandez, 408 So.2d 911 (La.1981).
The first prong of the test requires that the affidavit contain a recital of facts from which a neutral and detached magistrate may conclude that probable cause exists, rather than merely basing his determination of probable cause on the conclusions provided by others. This test may be satisfied by a showing that the information is the personal knowledge of the informant, through either direct observation or participation. State v. Stephenson, 387 So.2d 1111 (La.1980).
The second prong of the test requires that facts be presented which allow the magistrate to determine the reliability of the informant. The test may be satisfied either by a statement of the informant’s past performance (i.e., that his information has in the past led to arrests and convictions) or by the fact that his information constitutes an admission against the informant’s personal interest. State v. Buckley, 426 So.2d 103 (La.1983).
In the case before us, the affidavit meets both tests. The affidavit states, initially, that NOPD narcotics officers Koch and Fascio met with members of the Jefferson Parish Sheriff’s Office on August 18, 1981 and learned of the arrest four days earlier of one Gerald Searles, on two narcotics charges. The affidavit further avers that since the time of his arrest Searles had *1108 cooperated with Jefferson Parish Sheriff’s Office Detective Devlin in return for consideration with regard to those charges, and further, that at the time of his arrest Searles stated that heroin seized at that time had come from Leonard Montegut, who resides at 2808 Dumaine Street. The affidavit then set forth these specific facts:
“3. Searles stated that two weeks prior to the date of arrest (8-14-81), he went with Montegut to “Self Service Storage & Mini WareHouse located at 4640 Almo-naster Avenue, where Montegut has a storage room. Searles stated that he was not allowed to see the exact Storage Room that Montegut went to, but did observe a package that Montegut brought out with him. Searles stated that after leaving the Warehouse, he went with Montegut to 2808 Dumaine Street in the rear apartment and observed Montegut open the package, which contained about 6 to 8 Ozs of Heroin. Searles stated that he commented to Montegut that that was a lot of ‘Dope’, and that Montegut stated something to the effect that ‘This’ was only a portion of what he had, that originally brought in ‘2 Keys’ and that he still had three pounds left. Searles stated to Det. Devlin that Montegut took the Heroin that he brought to 2808 Dumaine and ‘Stepped On it Once’ (Diluted it by 50%) giving him somewhere in the area of a Pound Searles stated that he was present when the Heroin was cut, and that he sampled some of it, and that in his opinion, it was good Heroin. Searles stated to Det. Devlin that he had allready started negotiations with Montegut to purchase about 2 and ½ Ozs. of Heroin for $5000.00, and that he was supposed to contact him on Saturday 8-15-81.
4.On Saturday 8-15-81 at about 10:30 a.m. Det. Devlin, with Searles permission, monitored a telephone call between Mon-tegut and Searles, and made a tape recording of that conversation. That tape and other tapes will be made available to the Courts for any and all proceedings. Devlin stated that during the course of the conversation, Searles further negotiated with Montegut about the Heroin talked about previously and at the same time attempted to work an undercover Narcotics Agent into the deal. Montegut didn’t like the idea of dealing with any other than Searles, and postponed the negotiations until Tuesday 8-18-81.
5. On Tuesday 8-18-81 at about 11:00 a.m. Gerald Searles NM made a telephone call to Leonard Montegut. Montegut didn’t have time to talk and told Searles to call later. A second call was made at about 1:00 p.m. the above date, Searles received no answer. It should be noted that the telephone number called all three times was 821-9554, and that three calls were monitered and taped by Det. Devlin in Searles presence.
6. On Tuesday 8-18-81 at about 4:30 p.m. N.O.P.D. Narcotics Officers Stephen Koch and Rudolph Fascio and J.P.S.O. Narcotics Dets. John Devlin and Jim McLim went to the Self Store and Mini Warehouse located at 4640 Almonaster and met with the resident Manager, Katherine Crawford. The Officers produced a B of I photograph baring (sic) number 109-105, a photograph of Leonard Montegut and asked Ms. Crawford if she had ever seen this person at the Storage Warehouse. She stated that she did recognise him. Upon the Officers providing Ms. Crawford with the name Leonard Montegut, Ms. Crawford pulled some records with the name Leonard Montegut and stated that he rents a shed numbered A163. She stated that she felt something was funny about Montegut’s activities, that when he originally rented the Shed, he stated that he was storing a few things, that he was going to California and that he has made several trips to the Shed since then. Ms. Crawford stated that anytime someone comes to the Warehouse, they must register with the Management, and that she keeps a register at all times. The register, which was viewed by the above mentioned Officers showed Leonard Montegut coming to the warehouse on 8-3-81 at about 5:00 p.m. which is about 2 weeks prior to the above date, as Gerald Searles stated. Accord *1109 ing to the records, Montegut showed an address of 2848 Cluet (sic) St. Ms. Crawford looked in updated records, and told the Officers that the address on the newer records was 2808 Dumaine St. The same address that Searles stated Monte-gut resides at, and the same address that Searles saw and Used Heroin.
7. Upon leaving the Warehouse, Officers Koch and Fascio went to 2808 Du-maine St. and upon arriving, saw an unknown negro male walk out of the alley directly to the right of 2808 Dumaine St., which leads to the rear of 2808 Dumaine St. As the Officers passed, the subject wearing a green shirt and green pants, looked in the direction of the Officers, and the Officers noticed that his demean- or changed from somewhat calm to panic. As the Officers passed they observed the subject change his direction to just the opposite, and saw him walk back up the alley. The Officers went around the block, and returned to the front of 2808 Dumaine and noted no one in the alley. The Officers left the area at that time.
8. Gerald Searles is presently locked down at the Jefferson Parish Correctional Center under a $47000.00 Bond, which he can’t make. J.P.S.O. Det. Devlin feels that there is no way that Searles can make the Bond, and that any other attempt at Working an undercover Officer without Searles being present would be futile.
9. It should be noted that the N.C.I.C. Computer indicates that Montegut has two (2) prior Felony Convictions. The Officers were unable to determine what they were for.
10. Because of the information received, what the Officers investigation revealed and the Officers own observations, it is believed that Leonard Montegut is presently storing Heroin within a Storage Shed, number A 163, at the Self Service Storage & Mini Warehouse located at 4640 Almonaster, and within an apt. directly to the rear of 2808 Dumaine St. and respectfully request that this application be signed.”
The affidavit clearly sets forth a whole series of facts reflecting the informant’s observation of and participation in narcotics transactions with the defendant over a two-week period leading up to defendant’s arrest. There can be no question but that the informant’s information was based on his personal knowledge, rather than mere conclusions,
Furthermore, we are unable to discern error in the trial court’s finding that the magistrate properly determined the informant was reliable. Although the affidavit did not attest to the applicants’ past use of the informant in obtaining convictions, the information elicited from Searles was obviously contrary to his personal interest. See State v. Mosley, 412 So.2d 527 (La.1982). He was, at the time he gave applicants the information contained in the affidavit, under arrest on two narcotics charges [1], and his implication of Montegut as his source was in effect a confession of his involvement.
Additionally, the affidavit provided corroborating evidence in the form of the statement of the manager of the self-storage warehouse that Leonard Montegut was there on August 3, within the time frame that Searles had alleged; the phone conversation which officers monitored with the permission of Searles, in which he and the defendant were negotiating a narcotics transaction; and the officers’ own brief surveillance of Montegut’s Dumaine Street residence and the suspicious person walking out of the adjacent alley whose demeanor “changed from somewhat calm to panic” when he noticed the officers.
Based on the above facts and on the totality of the circumstances[2], we find that *1110 probable cause existed for the issuance of the search warrant, and that the evidence was therefore seized pursuant to a valid warrant. For this reason, we find defendant’s first assignment of error to be without merit.
SUPPRESSION OF THE CONFESSION
The record reflects that Leonard Monte-gut made two separate inculpatory statements to the narcotics officers who arrested him. According to Officer Robert McNeil, who accompanied the defendant to Charity Hospital, while at Charity he received the radio report of the recovery of heroin from the defendant’s residence. At that time Montegut, who was seated next to Officer McNeil and heard the radio transmission, stated,
“I guess it’s all over. I can’t go to the penitentiary. If I have to turn in my connection or his source of supply, I’ll do that, because the only people that go to the penitentiary are stupid people, and I’m not stupid, I’m smart.”
The defendant made the second inculpa-tory statement in the presence of Officer Stephen Koch, who testified that upon the defendant’s return to the Dumaine Street address after the discovery of the narcotics, Montegut stated to him words to the effect of “I didn’t want ya’ll to find my stuff. I have a snorting habit. That’s my stuff.”
The defendant assigns error to the trial court’s denial of his motion to suppress these two statements.
In order for a confession or incul-patory statement to be introduced at trial, the state must affirmatively show that it was voluntarily given and was not obtained through fear, duress, intimidation, menaces, threats, inducements or promises. State v. Eaker, 380 So.2d 19 (La.1980). The trial court’s conclusions as to the credibility of witnesses testifying as to voluntariness will not be disturbed unless unsupported by the evidence. State v. Cobbs, 350 So.2d 168 (La.1977); Eaker, supra. LA R.S. 15:451; C.Cr.P. article 703(B).
The transcript of the hearing on the motion to suppress the confession reflects ample evidence that the defendant’s statements were voluntarily made. ' Officers Koch, McNeil and Fascio testified at the hearing that the defendant was advised of his constitutional rights, that he appeared to understand his rights, that he was not threatened, abused, or otherwise intimidated in any way in order to secure a statement.
Defendant, however, claims that the involuntariness of his two statements can be inferred by the fact that “during the course of the search of his home, defendant-appellant had to be taken to the hospital because of injuries sustained,” implying that he made the statements as a result of coercion or abuse by police.
Officers McNeil and Fascio testified that when defendant began “throwing a tantrum” which continued for over ten minutes, he was simply handcuffed and removed from the house, and that he was neither struck, beaten, nor kicked, nor hurt in any way.
Moreover, the record reveals that defendant’s “injuries sustained” consisted of a bruised hip, for which the examining physician at Charity Hospital prescribed aspirin. We note also that the alleged injuries were complained of at the New Orleans Police Department Narcotics Office, after which defendant was examined at Charity, and it was sometime after the medical examination that he made the two statements in question.
As the trial court’s denial of the motion to suppress the confession is amply supported by the record, this assignment is without merit.
OPINION TESTIMONY
In his third assignment of error, defendant complains that the trial court erred in overruling an objection to the opinion testi *1111 mony of Officer David Peralta with respect to the potency of heroin.
When Officer Peralta was called to the stand, the State attempted to qualify him as an expert in the illicit use and distribution of heroin. The trial court found Peral-ta to be such an expert, without objection. Peralta testified generally about heroin and heroin use, including the use of various adulterants and utensils. He also stated his opinion that heroin will lose its potency after being cut and stored over a period of time, as will most other drugs.
The defense objected to the admissibility of such opinion testimony, and contends that Peralta was not qualified as an expert in chemistry or potency of drugs, and that he was not, therefore, qualified to give opinion testimony on questions relating to these issues.
It has been established in the jurisprudence of this state that as long as an expert testifies about matters, the knowledge of which he has obtained through special training or experience, it is not necessary or relevant that the subject to be discussed is or is not embraced by a scientific discipline. State v. Carter, 347 So.2d 236 (La.1977). Because the officer’s experience included living among and associating with heroin addicts and users it is quite likely his knowledge encompasses facts relating to the potency of heroin.
Furthermore, we note that the logical implication from Officer Peralta’s testimony about the potency of heroin is that a user of heroin will not keep a large amount of it around the house, but that a dealer of heroin perhaps would, not being so concerned with the drug’s potency or propensity to lose potency while stored. We find that any such implication, however, is harmless on appeal because the defendant was convicted of possession only, not possession with intent to distribute.
We find this assignment of error to be without merit.
As all three assignments of error are without merit, we therefore affirm the defendant’s conviction.
AFFIRMED.

. Gerald Searles was arrested on August 14, 1981, for possession of heroin and cocaine with the intent to distribute.

. The recent U.S. Supreme Court case of Illinois v. Gates,-U.S.-, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), has replaced the Aguilar-Spinelli test for evaluating sufficiency of search warrant affidavits based on informants’ hearsay with a “totality of circumstances” test in which the informer’s reliability and credibility *1110 and the basis of his knowledge are considered as intertwined considerations that may illuminate the issue of probable cause, rather than as strictly separate requirements.