593 So.2d 900 (1992)
STATE of Louisiana
v.
Eugene J. EVANS.
No. 91-KA-0409.
Court of Appeal of Louisiana, Fourth Circuit.
January 30, 1992.
Delores M. Crosbie, Indigent Defender Bd., Chalmette, for appellant.
John F. Rowley, Dist. Atty., Walker H. Drake, Glenn E. Diaz, Asst. Dist. Attys., Chalmette, for appellee.
Before SCHOTT, C.J., and CIACCIO and PLOTKIN, JJ.
*901 CIACCIO, Judge.
Defendant, Eugene Evans, was convicted of possession of cocaine with intent to distribute, a violation of R.S. 40:967, and was sentenced to nine years at hard labor. Defendant appeals, arguing three assignments of error. Finding merit in his first assignment of error, we reverse defendant's conviction and remand the case to the district court for a new trial.
On August 9, 1988, Eugene Evans was arrested in front of the Highland Bar in St. Bernard Parish and charged with possession of cocaine with intent to distribute. Sgt. Arthur Kaufman of the Narcotics Unit of the St. Bernard Parish Sheriff's Department testified that he had received a complaint of drug trafficking in the area of St. Bernard Highway between Highland Road and Caluda Lane. Sgts. Kaufman, John Miller, William Aldridge and Agent David Forester proceeded to the area of St. Bernard Highway between Highland Road and Caluda Lane in an unmarked police surveillance van at 7:00 p.m. on August 9, 1988, in response to the complaint.
Sgt. Kaufman further testified at trial that the following sequence of events occurred that night:
As the van proceeded down St. Bernard Highway, he looked down Highland Road and observed what he thought might be a drug transaction. He instructed Sgt. Miller, the driver of the van, to drive around the block (onto Caluda Lane) to Highland Road. They proceeded down Highland Road and approached the Highland Bar, where a group of eight to ten persons was congregated. From a distance of ten to fifteen feet, he saw defendant remove a small matchbox from his right front pocket, open it and remove an object, which he handed to second black male in exchange for money. Defendant then placed the box and the money back in his front pocket. The four officers then exited the van. Kaufman arrested the defendant, Sgt. Aldridge pursued the male who had been involved in the drug transaction (who ran toward St. Bernard Highway), Sgt. Forester pursued those who fled into the Highland Bar, and Sgt. Miller stayed with Kaufman.
Kaufman further testified that he advised the defendant of his Miranda rights and then searched him and found a small matchbox containing twenty-three pieces of an off-white rocky substance and thirty to thirty-five dollars in U.S. currency.
Defense counsel stipulated to the introduction of the State Crime Lab report showing the substance contained cocaine. Kaufman identified the money and cocaine seized from defendant.
Sgt. Miller, the driver of the surveillance van, corroborated Kaufman's testimony that they drove from St. Bernard Highway onto Caluda Lane to Highland Road and stopped in front of the Highland Bar; that Aldridge chased someone toward St. Bernard Highway; that Forester chased someone into the bar; Kaufman dealt with Evans; and he (Miller) stayed outside the bar with Kaufman. Miller testified that he patted down those persons who had not fled and found no weapons, so he released them. Miller stated that he saw Sgt. Kaufman retrieve a matchbox and money from defendant's right pocket. Miller further testified that Kaufman showed him the contents of the box on the scene, twenty-three pieces of rock cocaine. He stated that he did not personally see anyone advise defendant of his rights.
Sgt. Aldridge substantially corroborated the testimony of the other officers. He stated that as they approached the Highland Bar, he saw defendant in conversation with another black male. He saw defendant hand something to the male in exchange for money, then place the money in his pocket. Aldridge stated that when they stopped the vehicle, Sgt. Kaufman stopped the defendant and he (Aldridge) ran after the second black male, who had run toward St. Bernard Highway.
Aldridge further testified that at the Sheriff's office he asked the defendant a few general questions about the cocaine and more specifically asked him "How much were you selling it for," to which the defendant replied "Five dollars a piece."
*902 Aldridge could not recall if he asked the defendant if he had been advised of his rights prior to questioning him.
Officers Davis and Kaufman testified that they heard Aldridge ask defendant how much he was selling each rock for and heard defendant's reply (five dollars). However, neither officer could recall hearing any other question by Aldridge and both stated that they were not present during the entire questioning but were in and out of the particular office. Officer Miller could not recall whether he was present when defendant made the statement.
Officer Scott Davis testified that he was employed by the St. Bernard Parish Sheriff's Office when Evans was arrested but that he was not present at the time of his arrest. However, he testified that, after Evans was brought to the Sheriff's Office, he (Davis) filled out the Rights of Arrestee form and formally advised defendant of his rights; that defendant appeared to understand those rights; and that defendant signed the form in Davis' presence.
As his first assignment of error, defendant argues the trial judge erred in allowing Sgt. Kaufman to testify as an expert in the field of narcotics where the state failed to establish the proper foundation qualifying him as an expert.
Louisiana Code of Evidence article 702 provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
Further, article 703 provides:
Bases of Opinion Testimony by Experts The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.
A review of the record in the instant case fails to establish the basis for Officer Kaufman's testimony regarding the crack cocaine. When asked by the prosecutor "Do you have any experience or expertise in the field of narcotics?" Officer Kaufman answered "Yes, I do" but did not elaborate. After the defense counsel's objection, the trial court ruled that the officer's testimony would be limited "only to what his experience as a police officer would give him." However, the record does not reveal a basis for such expertise, such as the amount of time Sgt. Kaufman had been with the police force or with the narcotics division. In light of this and following the jurisprudence in this state, we find the trial court erred in overruling the defendant's objection. See State v. White, 450 So.2d 648 (La.1984); State v. Lard, 459 So.2d 1189 (La.App. 4th Cir.1984); State v. Montegut, 439 So.2d 1105 (La.App. 4th Cir. 1983).
In determining whether the erroneous admission of evidence requires reversal of a defendant's conviction, the correct standard is whether there is a reasonable possibility that the evidence might have contributed to the verdict, and whether the reviewing court is able to declare that the error was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); State v. Sanders, 568 So.2d 1025 (La.1990).
Sgt. Kaufman testified that upon seeing the "off white rocky" substance in the matchbox, he thought it was crack cocaine. Although we conclude this testimony was erroneously admitted, the defense's stipulation to the laboratory report of the Louisiana State Crime Lab, indicating that the substance in the matchbox contained cocaine, rendered the error harmless.
However, defendant specifically argues that the trial judge erred in allowing, over defense counsel's objection, Sgt. Kaufman's opinion testimony regarding the quantity of cocaine to prove intent to distribute, *903 as that was an issue to be decided by the jury.
When Sgt. Kaufman testified as to the method by which cocaine is transformed into crack, the following colloquy occurred:
Q. What exactly is crack cocaine? Do you know?
A. Crack cocaine is a substance. It's cocaine, and it's a more potent form of cocaine. I have only learned this through instruction. It's converted back to a powder form by a certain process of cooking it, mixing it with water and boiling it to a certain point, letting it cool down, and the process takes approximately one hour. But it's cocaine, just in a different form.
Q. Small rocks therewhat do they represent to you?
A. They represent
Mr. Larre:
Your Honor, he has not been qualified as an expert, to give any type of opinion.
THE COURT:
Mr. Diaz, what are you trying to elicit here?
MR. DIAZ:
That is, what dosage unit it is. We have a Code of Evidence now, Judge, and it deals with opinions, where I don't have
THE COURT:
I understand. I'm familiar with it, Mr. Diaz.
MR. DIAZ:
I'm just trying to show one of the elements with the intent, to show the dosage unit, what someone normally possesses.
THE COURT:
Overrule the objection. I'll note Mr. Larre's exception to the ruling of the Court.
THE WITNESS:
On this particular instance, when we obtained this, along with what I seized in particular, the quantity is possession with intent to distribute, along with a statement that was obtained
BY MR. DIAZ:
Q. Don't tell me anything about a statement yet. Tell me just about those 23 rocks up there. Would one person use those 23 rocks for his personal consumption?
A. Over a long period of time, they could. But no, not the way it was packaged, and under the circumstances what we observed, no. I do not think it was for personal use.
Q. What would one rock do?
A. One rock this particular size, when smokedit's smoked in a pipe. You add tobacco or something to the pipe, something to keep it burning, otherwise, you use too much. When you smoke one of these rocks, you obtain a euphoric-type high, rapid pulse beat. The high would last for approximately twenty minutes or maybe a half an hour.
Q. Is one rock one dosage unit of it?
A. Yes, sir.
The preceding excerpt from the trial testimony reflects that the prosecutor was attempting to prove intent by showing the amount of crack cocaine a user, as opposed to a distributor, might possess. We find the trial court erred in allowing Sgt. Kaufman to testify regarding this issue and in overruling the objection of the defense counsel. Sgt. Kaufman's testimony that "the quantity is possession with intent to distribute", and that he did not think the twenty-three rocks of cocaine were for the defendant's personal use, was in effect an opinion as to the defendant's guilt, that defendant possessed the cocaine with intent to distribute.
When an expert ventures his opinion on defendant's guilt, he improperly usurps the function of the jury. State v. Wheeler, 416 So.2d 78 (La.1982).
In Wheeler, police officers observed a man standing by a wall who, during a period of thirty minutes, was approached by several juveniles, each of whom handed the man something and received an item in return from a brown Schwegmann's grocery bag near his feet. As the officers approached, defendant picked up the bag, dropped it in a garbage can and walked away. The bag was retrieved and found to contain ten small coin envelopes and a plastic *904 envelope containing marijuana, a photograph of defendant with a gun in his waistband and a Crown Royal bag containing a loaded pistol. At the police station, the officers removed $359.00 and six bullets from defendant's pockets. The State presented its expert narcotics witness with a "hypothetical" situation of virtually identical facts and asked the witness what the likelihood is that an individual in those circumstances would be involved in the distribution of marijuana. Over the defendant's objection, the witness testified:
In my opinion the person would be involved in the distribution of marijuana, he might have a dime bag, but not several dime bags and he would not have $359.00.
In reversing the conviction, the Wheeler court stated:
Although there was abundant evidence of the defendant's guilt, and it is difficult to understand why the prosecutor thought it necessary to introduce an expert's opinion, we conclude that the improper introduction of such evidence was so prejudicial that the conviction must be reversed. The officer's testimony was tantamount to an opinion that the defendant was guilty of distribution of marijuana. As the subject matter of the opinion approaches the hub of the issue, the risk of prejudice and hence of reversible error consequently increases. This is particularly so when the witness expressing the opinion is one, such as a police officer, in whom jurors and the public repose great confidence and trust. Under these circumstances, it is clear that a substantial right of the defendant has been violated, and that there is a reasonable possibility that the errors contributed to his conviction. Article 921; State v. Gibson, 391 So.2d 421 (La.1980).
We are unable to distinguish this case from the Wheeler case. In both cases a police officer gave opinion testimony as to the guilt of the defendant. In Wheeler, this testimony was found to violate a substantial right of the accused so that there was a reasonable possibility that the error contributed to his conviction. We likewise find that Sgt. Kaufman's opinion testimony was so prejudicial that a substantial right of the defendant was violated and there is a reasonable probability that this error contributed to the defendant's conviction.
Accordingly, for the above reasons, defendant's conviction and sentence are reversed. The case is remanded to the trial court for a new trial.
REVERSED AND REMANDED.
SCHOTT, C.J., dissents with reasons.
SCHOTT, Chief Judge, dissenting:
Defendant was observed selling cocaine. When arrested he was in possession of twenty-three pieces of rock cocaine. When brought to the police station after he was given the necessary warnings against self incrimination, he told the policemen that he was selling the rocks for five dollars a piece. Under these circumstances alone, the officer's testimony with respect to dosage and the significance of defendant's possession of twenty-three pieces would constitute harmless error at worst. The evidence of defendant's guilt was overwhelming.
In any event this case is easily distinguished from Wheeler where only several dime bags of marijuana were found on the defendant's person. Here, where defendant had this quantity of cocaine, the jury could and probably did conclude on its own that this was more than possession for personal use. The officer's testimony did not contribute to the conviction.