416 So.2d 78 (1982)
STATE of Louisiana
v.
Bruce WHEELER.
No. 81-KA-2537.
Supreme Court of Louisiana.
June 21, 1982.
William J. Guste, J., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Richard Petre, John Craft, Spencer Kimball, Asst. Dist. Attys., for plaintiff-appellee.
Lloyd N. Frischhertz, Irvy E. Cosse, Jr., Seelig, Cosse & Frischhertz, New Orleans, for defendant-appellant.
DENNIS, Justice.[*]
Defendant, Bruce Wheeler, was convicted by a jury of possession of marijuana with intent to distribute, La.R.S. 40:967, sentenced to three years at hard labor, and fined $1,000. Defendant appealed and argues eight assignments of error. Because we conclude the trial judge committed reversible *79 error in admitting into evidence improper expert testimony over defendant's objection, the defendant's conviction and sentence are reversed.
Officers Schexnayder and Adams of the New Orleans Police Department were parked on Law Street writing a report on March 17, 1981. They became interested in the activities of a man standing by a wall about one-half block down the street. During a period of thirty minutes he was approached by several juveniles, each of whom handed the man something and received an item in return from a brown Schwegmann's grocery bag near his feet. Before approaching the man Schnexnayder and Adams summoned other police officers for assistance, instructing them to cover the suspect's rear in case he took flight. As officers Schexnayder and Adams drove down the street, the man picked up his Schwegmann bag, dropped it in a garbage can and walked away from them. The suspect was overtaken by Officer Adams, apprehended, patted down for weapons, advised of his rights, and placed in the police vehicle. Meanwhile, Officer Schexnayder retrieved the brown Schwegmann bag from the garbage can. It contained ten small coin envelopes and a plastic envelope containing marijuana, a photograph of the defendant with a gun in his waistband, and a purple Crown Royal bag containing a loaded pistol. After arriving at the police station, the police removed $359 and six bullets from defendant's pockets.
Defendant contends that the trial court erred in determining the admissibility of expert opinion evidence. Robert Humphrey, a narcotics officer with the New Orleans Police Department, was accepted by the court as an expert in narcotics transactions, particularly those involving marijuana. The prosecutor summarized the testimony of the arresting officers as to the events surrounding their encounter with the defendant in asking a hypothetical question as follows:
"Q. At this time I will ask you to assume that on an afternoon in March, 1981 two New Orleans police officers see an individual at the intersection of Law and Congress Streets. Please assume also at least three times this individual is approached by three black males and at this time the defendant reaches inside a grocery bag by his foot and gives the three black males something. The police approach this individual, he puts the bag in a garbage can nearby and leaves the scene. The police apprehend this individual and upon searching his person find $359.00 in cash and six live rounds of ammunition and please assume also the police inside the bag in the garbage can find ten coin envelopes of marijuana, one plastic bag of marijuana and one Magnum revolver. I am asking you to assume these ten coin envelopes here are the ten coin envelopes in the hypothetical question and also the envelope marked S-3 is the plastic bag in the hypothetical question. In your expert opinion what is the likelihood of this individual being involved in the distribution of marijuana?" [emphasis added]
The defense counsel objected:
"I object to this, I don't think that the witness is in a position to testify to that, I don't think the witness necessarily has all of the information that he would have to give an opinion even if he could, such as if the brown paper bag was the same this person they were watching had or a different bag. I don't think this case is a typical one for this hypothetical question."
The objection was overruled and the witness answered:
"In my opinion the person would be involved in the distribution of marijuana, he might have a dime bag, but not several dime bags and he would not have $359.00." [emphasis added]
Later in the trial the prosecution asked the expert witness: "What is the significance of the revolver found?" After defense counsel's objection was overruled, the witness answered:
"The reason the subject had the revolver was to keep from being ripped off, due to the location and amount of money and *80 what he was selling. It is quite common for someone in distribution to have a revolver."
Our statutes set forth the broad principles governing the admissibility of expert opinion evidence. Generally speaking, a witness can testify "only as to facts within his knowledge, and neither as to any recital of facts heard by him, nor as to any impression or opinion that he may have." La.R.S. 15:463. An exception to this rule is provided, however, for expert witness testimony:
"On questions involving a knowledge obtained only by means of a special training or experience the opinion of persons having such special knowledge are admissible as expert witnesses." La.R.S. 15:464.
In deciding whether to admit expert witness testimony, a trial judge should recognize that the foregoing statutory precepts are not detailed, specific rules but broad, guiding principles containing several variables: First, the terms "fact" and "opinion" denote merely a difference of degree of concreteness of description or a difference in nearness or remoteness of inference. The opinion rule operates to prefer the more concrete description to the less concrete, the direct form of statement to the inferential. Second, the purpose for which the testimony is admitted should have an effect upon the degree of concreteness required. As Professor McCormick observes:
"* * * In the outer circle of collateral facts, near the rim of relevancy, evidence in general terms will be received with relative freedom, but as we come closer to the hub of the issue, the courts have been more careful to call for details instead of inferences.
"* * *
"The trial judge may well be more liberal in the use of his discretion to admit opinions and inferences as to collateral matters and less liberal in order to see that the concrete details are brought out as to more crucial matters. Is it expedient to go further and to tie his hands by a rule forbidding opinion-evidence as to these `ultimate' matters?" McCormick on Evidence, § 12, p. 26 (1972).
Third, the preference for direct, concrete testimony and the reluctance to admit opinions and inferences as to matters crucially at issue are somewhat relaxed, if the opinion or inference to be expressed may be classified as expert testimony. To warrant the use of expert testimony two elements are required: (a) the subject of the inference must be so distinctly related to some science, profession, business or occupation as to be beyond the understanding of the average layman; and (b) the witness must have sufficient skill, knowledge or experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier of fact in his search for truth.
McCormick on Evidence, §§ 12, 13 (1972). See Cramer v. Theda Clark Memorial Hospital, 45 Wis.2d 147, 172 N.W.2d 427 (1970); Hill v. Lee, 209 Va. 569, 166 S.E.2d 274 (1969); Webb v. Fuller Brush Co., 378 F.2d 500 (3d Cir. 1967); Collins v. Zediker, 421 Pa. 52, 218 A.2d 776 (1966); Pennsylvania Threshermen, etc. Ins. Co. v. Messenger, 181 Md. 295, 29 A.2d 653 (1943); Bebont v. Kurn, 348 Mo. 501, 154 S.W.2d 120 (1941); Manhattan Oil Co. v. Mosby, 72 F.2d 840 (8th Cir. 1934). State v. Killeen, 79 N.H. 201, 107 A. 601 (1919)
It is believed that all courts would exclude extreme expressions, even by a witness who has been qualified as an expert, on such matters as how the case should be decided, as to whether the defendant is guilty or as to the amount of unliquidated damages which should be given. State v. Chevallier, 213 La. 528, 35 So.2d 135 (1948); State v. Borde, 209 La. 905, 25 So.2d 736 (1946); State v. Vinzant, 200 La. 301, 7 So.2d 917 (1942); State v. Bessa, 115 La. 259, 38 So. 985 (1905); State v. Robertson, 111 La. 35, 35 So. 375 (1903). See, e.g., Warren Petroleum Co. v. Thomasson, 268 F.2d 5 (5th Cir. 1959) (error to admit highway patrolman's statement after collision that owner of one of vehicles "should assume *81 liability"); Duncan v. Mack, 59 Ariz. 36, 122 P.2d 215 (1942) (whether public convenience would be served by transfer of license); Grismore v. Consolidated Products, 232 Iowa 328, 5 N.W.2d 646 (1942) (opinions as to guilt, negligence, testamentary capacity, reasonable causedictum). In such cases all of the variables weigh heavily against admission of the evidence: The evidence is not truly expert testimony because it relates to matters well within the jury's understanding and is wholly without value to the trier of fact in reaching a decision; the inference or opinion is abstract and indirect; and it relates to an ultimate issue rather than a collateral matter. When an objection is raised to the introduction of an expert's opinion or inference, care should be taken by the trial judge to assess the statement in light of each of the foregoing variables.
These variables have been considered determinative in cases admitting or rejecting expert police testimony on narcotic transactions. A police officer's opinion as to whether a drug transaction occurred was inadmissible when based solely on the bodily position and movements of the participants during a sidewalk conversation; the officer was no more expert than the jurors concerning the significance of the fact that the four persons kept looking at the area where defendant had his hands; nor did the officer's expertise add any probative value to defendant's shaking of his head from side to side when he was approached by two other persons. State v. Hernandez, 70 Cal. App.3d 271, 138 Cal.Rptr. 675 (1977). An officer's expert testimony that heroin was possessed "for sale" was erroneously admitted because it went to the ultimate issue of the case and was not a proper subject matter of expert testimony. State v. Arguello, 244 Cal.App.2d 413, 53 Cal.Rptr. 245 (1966) ("once he has given the jury the benefit of his experience with respect to the habits of users, the quantities involved, the value of narcotics found in defendant's possession, the customary methods of packaging them for wholesale, for retail and for use and matters of this nature, the jury should be as able as the witness to form an opinion whether or not the narcotics involved in the prosecution were held for sale." Id. 53 Cal. Rptr. at 251) In People v. Brown, 116 Cal.App.3d 820, 172 Cal.Rptr. 221 (1981) it was held permissible for an expert police witness to testify to such matters as that the expression "Are you looking?" means "Do you wish to purchase heroin?" that "bag" means a quantity of heroin, that the price of a "quarter" bag ordinarily ranged from $20 to $25, and to explain the meaning of the word "runner," but an officer's testimony that, in his opinion, defendant "was working as a runner" was reversible error, as such answer was tantamount to an opinion that defendant was guilty of aiding and abetting in the sale of heroin. See also, Ex Parte Dial, 387 So.2d 879 (Ala.1980); Commonwealth v. Waters, 276 Pa.Super. 584, 419 A.2d 612 (1980); but see, State v. Gomez, 101 Idaho 802, 623 P.2d 110 (1981); Cf. State v. Marquez, 127 Ariz. 98, 618 P.2d 592 (Ariz.1980); United States v. McCoy, 539 F.2d 1050 (5th Cir. 1976); United States v. Milton, 555 F.2d 1198 (5th Cir. 1977); United States v. Scavo, 593 F.2d 837 (8th Cir. 1979).
Applying the foregoing precepts, we conclude that the trial court erred in the present case by permitting the police officer to testify that, in his opinion, the defendant had been involved in the distribution of marijuana. This testimony was tantamount to an opinion that the defendant was guilty of the crime charged, an indirect, abstract inference as to the ultimate issue in the case. The officer was no more an expert than the jurors concerning the matters at issue in this case: the reliability of the arresting officers' observations that a man was engaged in passing out articles from a Schwegmann's shopping bag which he dumped in a trash can immediately before their approach; the officers' discovery of a substantial quantity of material later determined to be marijuana in individual containers inside the Schwegmann's bag; the officers' identity of the defendant as the same person who disposed of the Schwegmann's bag and was later arrested. Nor did the officer's expertise provide any *82 assistance to the jury in reaching a decision. There is no necessity for this kind of evidence; to receive it merely tends to suggest that the jury may shift responsibility for decision to the witnesses. McCormick, supra, p. 26. For the same reasons it was impermissible for the officer to testify that "[t]he reason the subject had the revolver was to keep from being ripped off, due to the location and amount of money and what he was selling."
On the other hand, the officer's opinion that it is quite common for marijuana distributors to carry revolvers for such purposes was admissible. This was a matter of which the officer had special knowledge which would have aided the jury in making a decision. This part of his testimony also consisted of a concrete description of facts within his knowledge and did not involve an opinion as to an ultimate issue in the case.
Although there was abundant evidence of the defendant's guilt, and it is difficult to understand why the prosecutor thought it necessary to introduce an expert's opinion, we conclude that the improper introduction of such evidence was so prejudicial that the conviction must be reversed. The officer's testimony was tantamount to an opinion that the defendant was guilty of distribution of marijuana. As the subject matter of the opinion approaches the hub of the issue, the risk of prejudice and hence of reversible error consequently increases. This is particularly so when the witness expressing the opinion is one, such as a police officer, in whom jurors and the public repose great confidence and trust. Under these circumstances, it is clear that a substantial right of the defendant has been violated, and that there is a reasonable possibility that the errors contributed to his conviction. Article 921; State v. Gibson, 391 So.2d 421 (La.1980).
In order to facilitate a retrial of the case, we have reviewed defendant's assignment of error number one contending that the trial court erred in denying his motion to suppress evidence. This assignment is without merit. The property was abandoned without any unlawful infringement of the defendant's rights and the bag was lawfully seized. State v. Williams, 398 So.2d 1112, 1114 (La.1981); State v. Chopin, 372 So.2d 1222 (La.1979); State v. Ryan, 358 So.2d 1274 (La.1978); State v. Perique, 340 So.2d 1369 (La.1976); State v. Lawson, 256 La. 471, 236 So.2d 804 (La.1970). The officer did not approach the defendant in a manner or under circumstances which made it seem that some form of detention was imminent until after he disposed of the bag. State v. Saia, 302 So.2d 869 (La.1974).
The circumstances upon which the defendant bases other claims of error will not likely recur at a retrial. We do not consider them in this review.
The conviction and sentence are reversed and the case is remanded for a new trial.
REVERSED AND REMANDED.
WATSON, J., dissents.
LEMMON, J., dissents and will assign reasons.
NOTES
[*] Judges Israel M. Augustine and Philip C. Ciaccio of the Court of Appeal, Fourth Circuit, and H. Charles Gaudin of the Court of Appeal, Fifth Circuit, participated in this decision as Associate Justices pro tempore, joined by Associate Justices Calogero, Dennis, Watson and Lemmon.