600 So.2d 924 (1992)
STATE of Louisiana
v.
Sidney RAIFORD.
No. 91-KA-0997.
Court of Appeal of Louisiana, Fourth Circuit.
May 28, 1992.
*925 Harry F. Connick, Dist. Atty., Martin Melton, Asst. Dist. Atty., New Orleans, for plaintiff-appellee State of La.
M. Craig Colwart, Orleans Indigent Defender Program, New Orleans, for defendant-appellant Sidney Raiford.
Before BARRY, KLEES and PLOTKIN, JJ.
KLEES, Judge.
On February 13, 1991 the defendant Sidney Raiford was charged with possession of cocaine with the intent to distribute, a violation of R.S. 40:967. The trial court denied the defendant's motion to suppress evidence and on April 10, 1991, a twelve-person jury found the defendant guilty as charged. On April 24, 1991 the trial court sentenced defendant to fifteen years at hard labor. The defendant was subsequently found not guilty as an habitual offender.

FACTS
On December 27, 1990, Sergeant Steve Gaudet of the New Orleans Police Department responded to reports of gunfire in the Desire Housing Project. As he was driving in the area, he saw the defendant walking. When the defendant saw the officer's marked vehicle, he turned around and walked between two buildings. The officer, whose suspicions had been aroused by the defendant's reaction to his car, drove around to the back of the building and turned off his lights. As the defendant appeared and walked closer, Sgt. Gaudet turned on the car lights, and the defendant dropped a brown paper bag which he was holding. Sgt. Gaudet stopped the defendant, talked with him about the report of *926 gunshots, then let him go. The officer retrieved the bag which the defendant had dropped, looked inside and saw crack cocaine, then followed the defendant, stopped him again, and finally placed him under arrest.
At trial, the defense stipulated that the contraband which Sgt. Gaudet seized from the defendant was 58 pieces of crack cocaine. Detective Ronnie Austin, an expert in the handling and packaging of narcotics substances, testified that the pieces were packaged in small Zip Lock bags which was one of the most common means used to distribute crack cocaine. The defense presented no witnesses at trial.

ERRORS PATENT
A review of the record for errors patent reveals that there are none.

ASSIGNMENT OF ERROR NUMBER 1
In his first assignment of error, the defendant contends that the trial court erred when it denied the motion to suppress the physical evidence. The appellant argues that there were insufficient grounds for an investigatory stop and that Sergeant Gaudet's actions in blocking the defendant's path and shining his car lights on him constituted such a stop.
The authorization for a temporary stop by a police office of a person in a public place is set forth in C.Cr.P. art. 215.1A, which provides:
A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
See also Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Johnson, 557 So.2d 1030 (La.App. 4th Cir.1990); State v. Jones, 483 So.2d 1207 (La.App. 4th Cir.1986), writ denied, 488 So.2d 197 (La. 1986). As this Court noted in Johnson:
"Reasonable suspicion" is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect's rights. State v. Belton, 441 So.2d 1195 (La.1983), cert. den. Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158 [80 L.Ed.2d 543] (1984), State v. Jones, supra. Mere suspicion of activity is not a sufficient basis for police interference with an individual's freedom. State v. Williams, 421 So.2d 874 (La. 1982).

Johnson, supra, at 1033.
While flight, nervousness or startled behavior at the sight of a police officer is not in and of itself enough to constitute reasonable cause to make an investigatory stop, these facts may be highly suspicious and lead to a finding of reasonable cause to detain the individual. State v. Belton, supra.
A person's liberty and privacy are not violated simply because a police officer attempts to talk with him as long as that individual is free to disregard the questioning and walk away. U.S. v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); State v. Lanter, 391 So.2d 1152 (La.1980); State v. Duplessis, 391 So.2d 1116 (La.1980). When an individual is actually stopped without reasonable cause or if a stop is imminent, the "right to be left alone" is violated, resulting in an illegal seizure. State v. Belton, supra.
When officers do not have the right to make an investigatory stop, property abandoned or otherwise disposed of as a result thereof cannot be legally seized. State v. Andrishok, 434 So.2d 389 (La. 1983). If, however, property is abandoned without any prior unlawful intrusion into a citizen's right to be free from governmental interference then such property may be lawfully seized. State v. Wheeler, 416 So.2d 78 (La.1982); State v. Williams, 398 So.2d 1112 (La.1981). In such cases, there is no expectation of privacy and, thus, no violation of a person's custodial rights. State v. Andrishok, supra. It is only where a citizen is actually stopped without reasonable cause or when that stop is imminent that the right to be left alone is violated thereby rendering unlawful any resultant *927 seizure of abandoned property. State v. Chopin, 372 So.2d 1222 (La.1979).
In State v. Donald Smith, 573 So.2d 1233 (La.App. 4th Cir.1991), writ denied, 577 So.2d 48 (1991), police officers patrolling an area known as "cocaine alley" saw a group of individuals gathered together. As the officers approached in their vehicle, all of the group ran except the defendant and another man. The officers approached the defendant, who dropped a small bag which was later determined to contain cocaine. This Court found that the contraband was legally seized because at the time defendant dropped it the officers had not yet intruded on his privacy interests. This conclusion was reached because the officers testified that they never spoke to the defendant prior to the time he dropped the cocaine, never drew their guns and had not turned on the police siren. There was also testimony that the officers were ten to twenty feet away at the time the drugs were abandoned.
More recently, the United States Supreme Court held that no seizure of a person, for Fourth Amendment purposes, occurs until the police come into physical contact with the person or until the person submits to the assertion of authority. California v. Hodari D., ___ U.S. ___, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). If the police attempt a stop by demands or actions which fall short of coming into physical contact with the suspect, and the suspect does not submit, there has been no "stop" or seizure of the person for Fourth Amendment purposes. Because there has been no illegal "stop", the question of suppression of the fruits does not arise and abandoned property will not be subject to suppression.
The facts in the instant case show that there was no "stop" of the defendant prior to his abandonment of the contraband under any jurisprudence. The defendant dropped the brown paper bag in response to the police officer's turning on the lights on his car. The officer had not yet exited his vehicle or taken any other action which would have caused the defendant to believe that his detention was imminent. However, even if the officer's sudden flashing of his light is construed to be action which would cause a reasonable person to believe his right to be left alone was about to be violated, under Hodari no stop had yet occurred because the defendant had not been physically touched and had not "submitted" to the officer's authority.[1]
This assignment of error lacks merit. No stop had occurred prior to the time the defendant abandoned the contraband.

ASSIGNMENT OF ERROR NUMBER 2
In his second assignment of error the defendant contends that the trial court erred in overruling the defense objection to the State's expert witness giving his opinion as to an ultimate fact at issue. The defense objection came when the expert identified the evidence seized from the defendant as the "Zip Lock bags" he had testified was the most common way to package crack cocaine for sale. The defendant argues that this testimony constituted giving an opinion on an ultimate issue of guilt, the intent to distribute, in violation of the holdings in State v. Montana, 421 So.2d 895 (La.1982); State v. Wheeler, 416 So.2d 78 (La.1982); State v. White, 450 So.2d 648 (La.1984), and State v. Dabney, 452 So.2d 775 (La.App. 4th Cir.1984).
Louisiana Code of Evidence Article 704 provides the rules for opinion testimony on an ultimate issue of fact:
Testimony in the form of an opinion or inference otherwise admissible is not to be excluded solely because it embraces an ultimate issue to be decided by the trier of fact. However, in a criminal case, an expert witness shall not express an opinion as to the guilt or innocence of the accused. *928 Comment (c) to this article states that the article is in harmony with the views expressed by the Louisiana Supreme Court in State v. Wheeler, supra, and that case should "continue to control."
In Wheeler, the defendant was charged with possession of marijuana with the intent to distribute. The prosecutor asked the police officer-expert a hypothetical question in which the details exactly mirrored the facts of the case. The expert was then asked, in his expert opinion "... what is the likelihood of this [hypothetical] individual being involved in the distribution of marijuana" to which he replied "[i]n my opinion the person would be involved in the distribution of marijuana ..." Wheeler 416 So.2d at 79. On appeal, the Louisiana Supreme Court found that the trial court had erred when it overruled the defendant's objection to the hypothetical question because the testimony "was tantamount to an opinion that the defendant was guilty of the crime charged, an indirect abstract inference as to the ultimate issue in the case." Wheeler at 81.
In State v. Montana, supra, the court held that where an expert gives his opinion as to the ultimate issue of the defendant's guilt, i.e. whether the defendant intended to distribute drugs, he has improperly usurped the function of the jury. The court in Montana found reversible error where a police officer, qualified as an expert in the packaging and distribution of illegal drugs, was given a factual situation similar to the circumstances surrounding the defendant's arrest, and the officer gave his opinion that "they [the defendants] had it for sale." Montana 421 So.2d at 900. See also State v. White, supra.
In State v. Dabney, supra, the defendant's conviction was reversed because the expert gave an opinion as to whether a person in possession of an exact number of "sets of Ts and Blues" (i.e. the same number of sets as was taken from the defendant) was possessing them for personal use. This Court found that the expert, who had already testified to the packaging and marketing of "Ts and blues" on a wholesale level, had given the equivalent of a direct statement that the defendant possessed the drugs with the intent to distribute.
However, in State v. Barber, 445 So.2d 463 (La.App. 4th Cir.1984), writ denied 446 So.2d 1224 (1984), this Court found that the expert testimony did not go to the ultimate issue of fact and hence was not reversible error. In Barber, the expert testified as to the methods of use, popularity, appearance, distribution, and price of certain drugs but did not give his opinion as to what constituted constructive possession or intent to distribute. Thus, this Court found that his expert testimony was clearly distinguishable from that found in Montana.
The expert testimony in the instant case is also distinguishable from the situations found in Wheeler, Montana, and Dabney. Officer Austin testified first as to the nature of "crack" cocaine. The following testimony then occurred:
It's packaged in a number of ways. A lot of that depends on where it's geographically sold at. Currently in New Orleans the most common way of selling it is with either no packaging whatsoever or in these very small Zip Lock bags used for stamps or coins or jewelry, things of that nature.
Q. Officer, let me show you what's been marked for identification State's Exhibit S-1. Would you look at this, please. Are these the Zip Lock bags that you spoke about?
A. Yes, they are. This is one of the most common means right now to distribute crack cocaine. Either this
MR. MEYER:
Note my objection for the record.
THE COURT:
That is noted.
Tr.Tr. 33
Nowhere in the expert's testimony were responses made towards the issue of whether a person in possession of Zip Lock bags with cocaine is possessing them for the purpose of or with the intent to distribute. Instead, the expert was merely identifying the type of Zip Lock bag he had indicated was commonly used as packaging in the distribution of cocaine.
*929 The prosecutor in this case did attempt to ask the same type of question as was found to be impermissible in Dabney when he asked "with these plastic packets here, there are 58 of them contained in that paper bag. What opinionWhat is your expert opinion as far as the distribution". However, the trial court sustained the defense objection. When the prosecutor again began a question involving 58 packets of cocaine the trial court sustained the objection "as to quantity" (Id.).[2]
This assignment of error lacks merit.
Accordingly, for the reasons expressed above, the defendant's conviction and sentence are hereby affirmed.
AFFIRMED.
NOTES
[1] It should be noted that Hodari concerns a person's rights under the Fourth Amendment to the United States Constitution. Article 1, Section 5, of the Louisiana Constitution of 1974 protects against "invasions of privacy" as well as against unreasonable searches and seizures. The clause in the Louisiana Constitution has been held to afford greater protection than the Fourth Amendment. State v. Church, 538 So.2d 993 (La.1989). Nevertheless, a panel of this Court has adopted Hodari. State v. Riley, 591 So.2d 1348 (La.App. 4th Cir.1991).
[2] The expert did give further testimony about the general methods used in distribution of cocaine on a street level (Tr.Tr. 34-35). Ironically, his testimony was that generally a dealer will not hold any quantity of drugs on his person but would have them stashed elsewhere or on another person. That expert testimony could just as well lead to the inference that the defendant was not engaged in distribution of cocaine at the time he was arrested.