715 So.2d 582 (1998)
STATE of Louisiana, Plaintiff-Appellee,
v.
Marcus Mandrill LEE, Defendant-Appellant.
No. 97-1470.
Court of Appeal of Louisiana, Third Circuit.
June 17, 1998.
*583 Charles F. Wagner, District Attorney, for State.
J. Albert Ellis, John Michael Lawrence, New Orleans, for Marcus Mandrill Lee.
Before YELVERTON, GREMILLION and PICKETT, JJ.
GREMILLION, Judge.
Defendant, Marcus Mandrill Lee, was charged with possession of a controlled dangerous substance, Schedule I (marijuana), *584 with intent to distribute, in violation of La. R.S. 40:966(A)(1). After filing a Motion to Suppress, which was denied, he entered a conditional Crosby plea of guilty and was sentenced to five years with the Louisiana Department of Corrections, to run concurrent with any other sentence being served. Defendant now appeals the trial court's ruling denying the Motion to Suppress. For the following reasons, we affirm.

FACTS
Defendant was traveling on a Greyhound bus out of Shreveport which stopped in Alexandria at approximately 6:00 a.m. In Alexandria, Louisiana State Trooper Timothy Ledet, a seventeen-year veteran of the Louisiana State Police, met the bus with his narcotics detection dog. Trooper Ledet led his dog onto the bus to check the bus aisles for narcotics. The dog did not alert Trooper Ledet to any narcotics while on the bus. Next, he directed the dog to the cargo/baggage hold of the bus. The dog alerted on a bag which had a baggage tag with the name "Mike Jones" attached.
Upon checking with the bus driver for a matching ticket stub, the driver directed Trooper Ledet to Defendant who was carrying a baby. Trooper Ledet then approached Defendant and asked to see his ticket. Trooper Ledet noticed that Defendant appeared nervous. Defendant was unable to locate the ticket, and this seemed to cause him to become more nervous. When Trooper Ledet inquired further, Defendant stated that his name was "Marcus Lee;" that he was traveling from the Dallas area; and that his occupation was that of a locksmith. Trooper Ledet asked the other passengers if the identified baggage belonged to any of them. All passengers denied ownership. He then asked Defendant if he would mind stepping off the bus in order to discuss the matter further. Defendant voluntarily agreed and complied with the request.
Upon exiting the bus, Defendant was asked if the identified baggage was his, and he denied ownership as well. With the bag appearing abandoned, Trooper Ledet opened it and checked the contents. Upon examination, Trooper Ledet discovered three plastic and foil wrapped bundles of marijuana weighing approximately three and one-half pounds, a set of triple-beam scales, locksmith tools and literature, and infant clothing and food appropriate for the seven-month-old baby accompanying Defendant. Defendant was then arrested by Trooper Ledet.

DISCUSSION
In his only assignment of error, Defendant argues that the trial court erred in denying his Motion to Suppress because evidence was obtained by an unreasonable search and seizure. Defendant makes several arguments in support of his contention. Initially, he argues it was impermissible for Trooper Ledet to enter the bus terminal with a narcotics canine to perform a random drug sweep of the bus and luggage. We disagree.
In United States v. Place, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), the United States Supreme Court ruled that a "canine sniff" of the exterior of luggage is not a search.[1] Individuals have reasonable expectations of privacy in the contents of luggage, but the drug detection dog sniffs the air space on the exterior of the luggage and no one has an expectation of privacy in the ambient air space outside of the luggage. In Louisiana, this reasoning has been followed in State v. Meyers, 520 So.2d 842 (La.App. 3 Cir.1987); State v. Fikes, 616 *585 So.2d 789 (La.App. 2 Cir.1993); State v. Arrington, 556 So.2d 263 (La.App. 2 Cir.1990), and State v. Thompson, 543 So.2d 1077, (La. App. 2 Cir.), writ denied, 551 So.2d 1335 (La.1989).
Applying this reasoning to the present case, the sweep by the drug detection dog of the cargo/baggage hold of the bus, particularly the luggage, was not a search. Furthermore, several federal cases holding that a canine sniff is not a search also hold that there is no need for an individualized reasonable suspicion before the police may conduct a canine sniff. United States v. Seals, 987 F.2d 1102 (5th Cir.), cert. denied, 510 U.S. 853, 114 S.Ct. 155, 126 L.Ed.2d 116 (1993) and United States v. Daniel, 982 F.2d 146 (5th Cir.1993). Reasonable suspicion and probable cause are necessary for searches or Terry stops but the canine sniff, alone, is neither a search nor a Terry stop.
In United States v. Graham, 982 F.2d 273 (8th Cir.1992) and United States v. Harvey, 961 F.2d 1361, (8th Cir.), cert. denied, 506 U.S. 883, 113 S.Ct. 238, 121 L.Ed.2d 173 (1992), the police conducted canine sniff sweeps of Greyhound buses temporarily stopped in the North Little Rock, Arkansas bus station in a manner similar to the procedure employed in the present case. After the dogs gave positive alerts to the presence of narcotics in certain pieces of luggage, the passengers returned to the bus where they were all questioned about the luggage, and the defendants identified the suspected luggage as theirs. Later searches of the luggage, pursuant to the passengers' consent or search warrant, revealed the presence of narcotics. In the present case, no warrant or consent was ever obtained. In both the Graham and Daniel cases, the courts upheld the seizure of the luggage finding that the canine sniffs were not a search and that the positive alert by the drug detection dogs was sufficient to give the police probable cause to believe that the luggage contained narcotics.
In the present case, the bus driver consented to allow Trooper Ledet to "work" the narcotics dog in the aisle and in the cargo/baggage hold of the bus. Thus, Trooper Ledet had the right to be where he was when the dog gave a positive alert on the baggage. Since the canine sniff was not a search, no Fourth Amendment right was implicated simply by the introduction of the narcotics dog to the baggage in the cargo/baggage hold. The Fourth Amendment only protects against "unreasonable searches and seizures." It is clear that people do not have a reasonable expectation of privacy in odors emanating from their luggage. Under the Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution, there has been no "unreasonable search and seizure" because the canine sniff, in this case, was not a search.
The State contends that law enforcement agents do not need even articulable suspicion to prompt a "sniff" by a narcotics-detection dog of packages which are placed in the charge of common carriers and not in the possession of individuals. Defendant argues, on the other hand, that as a passenger on Greyhound, he had a reasonable expectation of privacy and a right to be free from unreasonable searches and seizures. He supports his argument with State v. Vikesdal, 29,043 (La.App. 2 Cir. 1/31/97); 688 So.2d 685.
However, Vikesdal differs from this case at key points. In Vikesdal, the bus company (Kerrville Bus Lines) had previously agreed with law enforcement that they would stop in front of the police station when randomly signaled in order to allow the police to enter the bus with a narcotics dog to sniff baggage for contraband. In that case, the stop occurred at the police station, not at the bus terminal, which was directly behind the police station. Of further importance was that the passengers were not allowed to leave the bus during this time. Thus, what the second circuit based its opinion on was that the people were illegally seized and the bus company could not waive the passengers' constitutional rights to be free from unreasonable searches and seizures. The people on the bus were detained without any individualized suspicion that a person on that bus was committing a criminal act. The stop of the bus and its passengers was an illegal detention or seizure. Since the seizure was unconstitutional, the contraband from the subsequent "working" of the dog, that resulted in the search and revelation of contraband, was *586 fruit thereof; thus, it was inadmissible. The second circuit stated in conclusion:
[T]he seizure of the defendant's person here occurred without any reasonable suspicion or probable cause to believe that the defendant or anyone else on the bus had violated some law, in contravention of La. Const. art. 1, § 5 and La.C.Cr.P. art. 215.1. The marijuana obtained from Vikesdal's luggage as a result of this unlawful seizure is not legally admissible.
Id. at 691.
In the case sub judice, the bus made its regular stop at the bus station and people were not seized because they were free to leave the bus prior to the narcotics dog "working" the bus. The canine sniff in this case was not a search. In light of the evidence adduced, Defendant had no reasonable expectation of privacy that his luggage in the baggage compartment would not be subjected to a narcotics dog if law enforcement gained permission from the bus line for that purpose. Therefore, we find that Trooper Ledet properly checked the luggage in the cargo/baggage hold with the narcotics dog.
The second issue of this assignment is whether Trooper Ledet's initial contact with Defendant was permissible. The contact between Defendant and Trooper Ledet was in the nature of an "investigatory stop" under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Accordingly, the State must show that Trooper Ledet had the requisite "reasonable suspicion" required for an "investigatory stop."
La.Code Crim.P. art. 215.1(A) codifies the holding of Terry, and states the following:
A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
The validity of an investigatory stop depends on whether the officer has adequate articulable knowledge of particular facts, sufficient to warrant infringement upon the individual's constitutional right to be left alone. State v. Allen, 95-1754 (La.9/5/96); 682 So.2d 713; State v. Neyrey, 383 So.2d 1222 (La.1979). In determining whether adequate articulable knowledge exists, courts must consider the totality of the circumstances and whether the detaining officer has a particularized and objective basis for suspecting that the individual has engaged in criminal activity. United States v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); Allen, 682 So.2d 713; State v. Matthews, 366 So.2d 1348 (La.1978). An individual is "seized" under La. Const. art. I, § 5 when the individual is either "actually stopped" or when an "actual stop" of the individual is "imminent." State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Tucker, 626 So.2d 707 (La.1993). "An investigatory stop is a form of `seizure,' and although it is no lesser of a restriction on a person's freedom of movement than an arrest, it is considered a lesser intrusion because it is briefer than an arrest." State v. Senegal, 95-796, p. 5 (La.App. 3 Cir. 12/6/95); 664 So.2d 832, 834. See also State v. Cabanas, 594 So.2d 404 (La.App. 1 Cir.1991), writ denied, 598 So.2d 371 (La.1992); State v. Vincelli, 555 So.2d 21 (La.App. 1 Cir.1989).
In this case, when the narcotics dog alerted on baggage in the cargo/baggage hold, Trooper Ledet obtained the name "Mike Jones" from the tag on the suspect baggage. He then checked with the bus driver, who checked his passenger and ticket information and identified Defendant as the person to whom the baggage belonged. Only after this did Trooper Ledet approach Defendant and begin questioning him. At this point, Trooper Ledet had reasonable suspicion that criminal activity was afoot and that Defendant was the person who was engaged in the criminal activity.
It was at this point that Trooper Ledet approached Defendant and identified himself and asked for his name, identification, and ticket. Trooper Ledet noticed Defendant appeared nervous. When questioned, Defendant responded that his name was "Marcus Lee" but stated he did not have any identification.[2] *587 Trooper Ledet noticed Defendant become more nervous as he made a "half effort" to locate the ticket which he said he could not find.[3] Trooper Ledet then asked the other passengers on the bus whether any of them were named "Mike Jones," to which no one responded positively. Finally, Trooper Ledet asked Defendant "if he would mind stepping off the bus to discuss it a little further, and he voluntarily came off the bus with [him]...."[4]
We find that at all times during the encounter with Defendant, Trooper Ledet's actions were proper and authorized under law. Viewing these facts under the totality of circumstances, Trooper Ledet had the requisite reasonable suspicion to make an investigatory stop under La.Code Crim.P. art. 215.1 because he had developed reasonable suspicion that Defendant was involved in criminal activity. This issue is without merit.
The final issue under this assignment of error is whether Trooper Ledet's search of the baggage was proper. The lawful seizure of abandoned property recovered during an investigatory stop or arrest depends upon the existence of either a reasonable suspicion or a reasonable cause. State v. Jones, 94-1261 (La.App. 3 Cir. 5/17/95); 657 So.2d 262. When officers do not have the right to make an investigatory stop, property abandoned or otherwise disposed of as a result thereof cannot be legally seized. State v. Andrishok, 434 So.2d 389 (La.1983); State v. Raiford, 600 So.2d 924 (La.App. 4 Cir.1992). However, if property is abandoned without any prior unlawful intrusion into a citizen's right to be free from governmental interference then such property may be lawfully seized. State v. Britton, 93-1990 (La.1/27/94); 633 So.2d 1208; State v. Wheeler, 416 So.2d 78 (La.1982); State v. Williams, 398 So.2d 1112 (La.1981); Raiford, 600 So.2d 924. In such cases, there is no expectation of privacy, thus, no violation of a person's custodial rights. Id., Andrishok, 434 So.2d 389. Therefore, it is only where a citizen is actually stopped without reasonable cause or when the stop is imminent that the right to be left alone is violated thereby rendering unlawful any resultant seizure of abandoned property. Tucker, 626 So.2d 707; State v. Chopin, 372 So.2d 1222 (La.1979); Raiford, 600 So.2d 924.
We have determined that Trooper Ledet had sufficient reasonable suspicion to make an investigatory stop of Defendant. The record clearly shows that Defendant abandoned the baggage in question denying that it was his. No one else claimed possession of it. Therefore, we find that the baggage was abandoned. Having found that abandoned property was seized subsequent to a lawful investigatory stop, we find that the search of the baggage was proper. This issue has no merit.

CONCLUSION
Trooper Ledet was operating within the law when he introduced his narcotics dog to the baggage in the cargo/baggage compartment of the bus, and established the necessary reasonable suspicion for the investigatory stop of Defendant for questioning. Finally, the baggage was voluntarily abandoned by Defendant; thus, Trooper Ledet legally searched the bag and seized evidence contained therein. The trial court did not err in denying the Motion to Suppress. Defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The United States Court of Appeals, Second Circuit, has held that a "canine sniff" at a person's closed apartment door was a search. The court stated, "[b]ecause of defendant Wheelings' heightened expectation of privacy inside his dwelling, the canine sniff at his door constituted a search." United States v. Thomas, 757 F.2d 1359 (2nd Cir.), cert. denied, 474 U.S. 819, 106 S.Ct. 66, 67, 88 L.Ed.2d 54 (1985), and cert. denied, 479 U.S. 818, 107 S.Ct. 78, 93 L.Ed.2d 34 (1986). However, several circuits have criticized this holding. While criticizing the holding in Thomas, the D.C. Circuit held that an alert at a person's passenger compartment from the public corridor on an Amtrak train was not a search. United States v. Colyer, 878 F.2d 469 (D.C.Cir. 1989). See also United States v. Lingenfelter, 997 F.2d 632 (9th Cir.1993). The Fifth Circuit in Horton v. Goose Creek Indep. School Dist., 690 F.2d 470 (5th Cir.1982), cert. denied, 463 U.S. 1207, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983), which is a pre-Place decision, held a dog sniff of a student's person constituted a search.
[2] After Defendant's arrest, in a search incident to arrest, Defendant was found in possession of three picture identification cards, one with his picture and two with pictures of other black males.
[3] After Defendant's arrest, in a search incident to arrest, Defendant was found in possession of his original ticket and original claim stub for the baggage in question.
[4] We note that Defendant's statement that he would voluntarily accompany Trooper Ledet off the bus does not change the "investigatory stop" to a consensual encounter because Defendant could have felt he was not free to leave under the facts of this case.