JjDOUCET, Chief Judge.
The Defendant, Joseph Brad Gauthier, seeks review of the trial court’s denial of his motion to suppress the evidence and statements obtained in the present matter.
At about 2:00 a.m. on January 26, 1998, Officer Jeff Robinson, a Grant Parish police officer, was patrolling in the normal course of his duties, when he passed Maxwell’s Mini-Mart, a convenience store located off Highway 165 in Pollock, in Grant *793 Parish. Robinson saw the Defendant sitting in the parking lot in his Ford Ranger truck and pulled in to see what he was doing. The store was closed and was not due to open until 2:30 or 3:30 a.m. The Defendant told Robinson he was just getting a Coke then going back home. Robinson left to check on another store. On his way back, about seven minutes later, he noticed the Defendant was still parked at the store. This time another car was present. The two cars were parked side by side with the drivers’ sides facing each other. When Robinson turned around to pass | ?again, both cars’ headlights came on. He parked his patrol car behind the vehicles. Robinson asked the Defendant what was going on. The Defendant told him that he was about to leave when the other two pulled up and wanted to talk. Robinson found this behavior suspicious. He walked between the cars so that he could obtain drivers’ licenses to run identity checks and check for warrants. When he approached the Defendant’s vehicle, he smelled a faint odor of marijuana.
After taking the driver’s licenses, Robinson told the subjects that he was going to run a check on their driver’s licenses and went back to his patrol car. While in his patrol car, he called Detective Dancer to come to the scene with the canine unit. Dancer arrived fifteen to twenty minutes later with the canine unit. The Defendant consented to a vehicle search. Dancer ran the dog around the car and it showed an odor response. A search of the vehicle yielded a small bag of marijuana. The dog did not show an odor response on the other vehicle, and the two subjects in that car were allowed to leave. The Defendant was placed under arrest for possession of marijuana. After his arrest, an additional quantity of marijuana was found about thirty feet away from the Defendant’s vehicle. The Defendant allegedly later made a statement to Dancer that the large bag of marijuana was his and that he intended, to trade it for crack cocaine.
The Defendant was charged by bill of information with possession with intent to distribute a controlled dangerous substance, marijuana, in violation of La.R.S. 40:966(A). At his arraignment on July 9, 1998, the Defendant waived the reading of the bill of information and entered a plea of not guilty. The Defendant filed a motion to suppress on October 20, 1998. A hearing on the motion was held on November 5, 1998. The trial judge, after hearing the testimony and presentation of evidence, ^denied the Defendant’s motion to suppress. The trial was set for November 12, 1998. The Defendant withdrew his former plea of not guilty and entered a plea of guilty under State v. Crosby, 838 So.2d 584 (La.1976), reserving his right to appeal the trial court’s denial of his motion to suppress the evidence and any statements.
The Defendant waived all sentencing delays and was sentenced to serve five years at hard labor, with four years of the sentence suspended. The trial judge placed the Defendant on supervised probation for a period of five years, subject to both general and special conditions of probation. A motion for appeal and designation of record was filed on November 13, 1998. On appeal, the Defendant alleges one assignment of error,
MOTION TO SUPPRESS
As his sole assignment of error the Defendant contends that the trial court committed manifest error in refusing to suppress the evidence and statements obtained in this matter.
1. Was the Initial Encounter an Illegal Detention?
The Defendant asserts that Robinson did not have the requisite reasonable suspicion to detain him. He argues that, as a result, the evidence was seized pursuant to an illegal detention and should be suppressed.
Unreasonable searches and seizures are prohibited by both the Fourth *794 Amendment to the United States Constitution and Article 1, § 5 of the Louisiana Constitution. It is well settled that a seizure and search conducted without a warrant issued upon probable cause is per se unreasonable unless the warrantless seizure and search “can be justified by one of the narrowly drawn exceptions to the warrant requirement.” State v. Tatum, 466 So.2d 29, 31 (La.1985). La.Code Crim.P. art. 703(D) provides that the State is to bear the burden of proving the admissibility of evidence seized without a warrant.
La.Code Crim.P. art. 215.1(A) allows law enforcement officers to conduct an investigatory stop without a warrant or probable cause. The officer need only have a reasonable suspicion that the person “has been, is, or is about to be engaged in criminal conduct.” State v. Belton, 441 So.2d 1195, 1198 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). An investigatory stop is a form of seizure. Although it is no less a restriction on a person’s freedom of movement than an arrest, it is considered a lesser intrusion because it is briefer than an arrest. State v. Cabanas, 594 So.2d 404 (La.App. 1 Cir.1991), writ denied, 598 So.2d 371 (La.1992).
“However, in the case of State v. Neyrey, 383 So.2d 1222 (La.1979) the Louisiana Supreme Court stated that the suspicion requirements of La.C.Cr.P. art. 215.1, Article I, § 5 of the Louisiana Constitution and the Fourth Amendment of the U.S. Constitution are necessary only when the stop is forcible.” State v. Perrot, 600 So.2d 805, 807 (La.App. 3 Cir.1992).
[Pjolice officers do not need probable cause to arrest or reasonable cause to detain each time they attempt to converse with a citizen. The mere fact that the police approach a citizen and address him does not compel that citizen to respond to the inquiries or comply with their requests; legally, nothing prevents his choosing not to answer and walking away.
State v. Shy, 373 So.2d 145, 147 (La.1979).
As long as the questioned person “remains free to disregard questions and walk away, there has been no intrusion upon that person’s liberty or privacy as would require some particularized and objective justification under the fourth amendment.” Perrot, 600 So.2d at 807; see also Belton, 441 So.2d 1195; State v. Lanter, 391 So.2d 1152 (La.1980); State v. Duplessis, 391 So.2d 1116 (La.1980).
In United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), the United States Supreme Court concluded that a person has been ‘seized’ within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave.
Perrot, 600 So.2d at 807.
In State v. Abrams, 547 So.2d 19, 21 (La.App. 4 Cir.), writ denied, 551 So.2d 629 (La.1989), the Fourth Circuit stated:
Some factors to be considered in determining whether a police officer’s contact with a citizen constitutes a seizure of the person are the threatening presence of several officers, display of weapons by an officer, physical touching of the citizen’s body, and the use of language or tone of voice indicating that compliance with the officer’s request might be compelled. U.S. v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Not every contact between officer and citizen amounts to a seizure of the citizen. Only when the officer, by means of physical force or show of authority, in some way restrains the liberty of a citizen is there a seizure of the citizen. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The Mendenhall test is imprecise and flexible, depending on the facts and circumstances of the case, and ultimately resolved by looking to the reasonable man’s interpretation of the police offi *795 cer’s conduct in question. Michigan v. Chesternut, 486 U.S. 567, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988).
At the hearing on the motion to suppress, Robinson testified that he positioned his vehicle so that the Defendant and the occupant of the other vehicle knew he wanted them to stay there, but that he was fifteen to twenty feet away from either vehicle. He stated that if the Defendant had gotten out of his vehicle and walked away he would have asked the Defendant to stop but, had the Defendant kept going, he would have let him go because he had no reason to detain the Defendant. Further, he stated that the Defendant could have backed his vehicle out of its position and left.
|RIn State v. Beasley, 430 So.2d 1273, 1277 (La.App. 1 Cir.1983), the First Circuit found that “even though the officers involved in the ... case had no knowledge or suspicion that the defendants were engaged in criminal activity, they did not need ‘probable cause to arrest’ or ‘reasonable cause to detain’ in order to approach the defendant’s car,” where the car was backed into a driveway leading into a farmer’s pasture approximately thirty to forty feet from the traveled portion of the roadway. The court also found that “the fact that a police vehicle pulls up beside, to the rear of, or headlight-to-headlight with a vehicle it does not necessarily constitute restraint, nor necessarily stop the individual from going about that individual’s lawful activities.” Id.
Although it is clear from Robinson’s testimony that he had no knowledge that the Defendant was engaged in criminal activity, he had the right to approach the vehicles and converse with the suspects. Only Robinson made an initial contact with the Defendant and he did not have his weapon drawn. There was no physical touching of the Defendant’s body and there is no evidence of record to support a finding that Robinson used language suggesting that the Defendant had to comply with his search request. See Abrams, 547 So.2d 19. Therefore, we conclude that the initial encounter was not a stop which would have required reasonable suspicion that the Defendant was engaged in criminal conduct, but was only a situation that the officer reasonably wanted to check out.
Later, when Robinson approached the vehicles to ask the occupants for identification, he smelled the faint odor of marijuana from the Defendant’s vehicle. At that point, there existed the necessary reasonable suspicion to detain the Defendant for further investigation. Therefore, in this case as in Beasley, 430 So.2d 1273, the 17investigatory stop took place after the officer obtained the information necessary to provide the reasonable suspicion that the Defendant was involved in past, present or future criminal activity. “Detecting marijuana by smell does not constitute a search, and there is no reasonable expectation of privacy from lawfully positioned officers with inquisitive nostrils.” State v. Gordon, 93-1923, p. 6 (La.App. 1 Cir. 11/10/94), 646 So.2d 1005,1010. In State v. Baggett, 28,843 (LaApp. 2 Cir. 12/11/96), 684 So.2d 1072, the Second Circuit found that after making a valid initial stop of Defendant, the officers were justified in further detaining the Defendant long enough to allow the narcotics dog to perform a sniff test where the officer had smelled marijuana on the Defendant.
2. Was the Search Legally Conducted?
In this case, Robinson collected driver’s licenses and, while he was checking for outstanding warrants, called for a canine unit. The canine unit arrived within fifteen to twenty minutes. Although the detective who asked the Defendant for permission to search the vehicle was not present at the hearing, Robinson testified that he heard Dancer ask the Defendant if he could search the vehicle and heard the Defendant give permission to search. The detective ran the dog around the Defendant’s vehicle. The dog showed an odor response, then the detective searched the *796 vehicle and found a small bag of marijuana. Because the initial contact with the Defendant was not an investigatory stop until after the officer smelled marijuana, the consent and subsequent confession were the valid product of a legal detention. In Paggett, 28,843, p. 4, 684 So.2d at 1074 (citation omitted), the court found that:
The presence of marijuana odor on Paggett alone justified a warrantless search of the vehicle under exigent circumstances. The use of the drug dog to confirm or deny the officers’ suspicions was entirely supported, irrespective of whether Paggett consented to the search.
|rA canine sniff test by a well-trained narcotics detection dog does not constitute a search within the meaning of the Fourth Amendment.
In the present case, the dog alerted to the presence of drugs in the Defendant’s truck. Consequently, the officers did not need the Defendant’s consent to search. The smell of the marijuana, along with the use of the dog, justified the warrantless search of the Defendant’s vehicle. The record also shows that the Defendant gave oral consent to the search of his vehicle.
3. Was the Marijuana Found near the Vehicle Legally Seized?
While the Defendant was being transported to the police station by Robinson, Dancer called Robinson back to the scene because he needed the keys to the Defendant’s vehicle so that it could be towed. During the time that it took the officer to turn around and come back to the scene, Dancer discovered an additional quantity of marijuana near the Defendant’s vehicle. Robinson testified that the detective found a one pound bag of marijuana about thirty feet away from the Defendant’s vehicle. No one saw the Defendant discard the bag of marijuana.
In State v. Lee, 97-1470, p. 9 (La.App. 3 Cir. 6/17/98), 715 So.2d 582, 587, writ denied, 98-1944 (La.11/20/98), 728 So.2d 1285, this court discussed the lawful search of abandoned property as follows:
The lawful seizure of abandoned property recovered during an investigatory stop or arrest depends upon the existence of either a reasonable suspicion or a reasonable cause. State v. Jones, 94-1261 (La.App. 3 Cir. 5/17/95), 657 So.2d 262. When officers do not have the right to make an investigatory stop, property abandoned or otherwise disposed of as a result thereof cannot be legally seized. State v. Andrishok, 434 So.2d 389 (La.1983); State v. Raiford, 600 So.2d 924 (La.App. 4 Cir.1992). However, if property is abandoned without any prior unlawful intrusion into a citizen’s right to be free from governmental interference then such property may be lawfully seized. State v. Britton, 93-1990 (La.1/27/94), 633 So.2d 1208; State v. Wheeler, 416 So.2d 78 (La.1982); State v. Williams, 398 So.2d 1112 (La.1981); Raiford, 600 So.2d 924. In such cases, there is no |9expectation of privacy, thus, no violation of a person’s custodial rights. Id., Andrishok, 434 So.2d 389. Therefore, it is only where a citizen is actually stopped without reasonable cause or when the stop is imminent that the right to be left alone is violated thereby rendering unlawful any resultant seizure of abandoned property. [State v. JTucker, 626 So.2d 707 [(La.1993)]; State v. Chopin, 372 So.2d 1222 (La.1979); Raiford, 600 So.2d 924.
In this case, it appears that the bag of marijuana was discarded before any “actual stop” or “imminent actual stop” of the Defendant had occurred. Therefore, the abandoned property was lawfully seized by the police in this matter.
4. Was the Defendant’s Confession Legally Obtained?
The Defendant contends that his confession should be suppressed because the State failed to present credible competent evidence that the statement was legal *797 ly obtained. The Defendant further argues that the suppression of this statement combined with the State’s failure to present evidence of the Defendant’s intent to distribute should, at a minimum, result in the reduction of his conviction to simple possession. The Defendant alleges that his alleged inculpatory statement, which was made during questioning at the police station, was made only under the threat of continued physical violence. At the hearing on the motion to suppress, the Defendant testified that Dancer knocked his head back before the Defendant started “telling him about what was really going on.” The Defendant then allegedly told the officers that he was going to trade marijuana with the other guys who were present in the parking lot for crack cocaine.
In State v. Cassell, 540 So.2d 1219, 1221 (La.App. 3 Cir.), writ denied, 548 So.2d 321 (La.1989) (citation omitted), this court stated:
In a criminal case, as in any other case, the determination of credibility is a function of the trier of fact. Whenever there is conflicting testimony as to factual matters, the question of credibility of witnesses is within the sound discretion of the trier of fact. A |1fldetermination of credibility will not be reversed on appeal absent manifest error.
In the present case, the court apparently chose to not believe the Defendant’s version of the events leading up to his statement. The question of the Defendant’s credibility is more properly left to the determination of the trial judge, absent an abuse of the trial judge’s discretion. The Defendant admitted at the hearing that he was advised of his Miranda rights before questioning and that he understood these rights. Therefore, the Defendant’s contentions regarding his statements have no merit. Furthermore, the attacks on the State’s failure to prove an essential element of the crime, intent to distribute, are improper because the Defendant entered a plea of guilty reserving only the right to question the trial court’s ruling on the motion to suppress.
CONCLUSION
Because initially the encounter between Robinson and the Defendant did not constitute an investigatory stop and Robinson was just checking on the situation, he did “not need probable cause to arrest, or reasonable cause to detain,” in order to have a conversation with the Defendant. Neyrey, 383 So.2d at 1224. The necessary reasonable suspicion to detain the Defendant for further investigation and the investigatory stop occurred after Robinson smelled the odor of marijuana coming from the Defendant’s vehicle. Because the detention was legal, the subsequent search and confession were also valid. The seizure of the abandoned property was also lawful.
Therefore, there was no error in the trial court’s ruling denying the motion to suppress and it is affirmed.
AFFIRMED.