| STEWART, J.
After the trial court denied a motion to suppress evidence obtained pursuant to a search and seizure conducted by sheriff’s deputies at a Greyhound bus station in Shreveport, Louisiana, the defendant, Mark Anthony Alsay, entered a Crosby plea to possession of over 28 grams but less than 200 grams of cocaine, a Schedule II controlled dangerous substance, in violation of La. R.S. 40:967(F)(l)(a). He now *146 appeals his conviction by arguing that the trial court erred in denying the motion to suppress. For the following reasons, we affirm.
FACTS
On April 4, 2001, the defendant was traveling as a passenger on a Greyhound bus en route from Dallas to Baton Rouge when the bus made a regularly scheduled stop at the Greyhound bus terminal in Shreveport, Louisiana. With the permission of Greyhound’s management, two Caddo Parish sheriffs deputies assisted by a specially trained “drug dog” were at the bus terminal to conduct “narcotics interdiction” activities for drug trafficking. According to Deputy James McLamb, he obtained permission from the bus driver to allow the drug dog to check the bus. McLamb then led the drug dog to the cargo compartment underneath the bus. The dog responded aggressively to a large cardboard box bearing a baggage ticket with the defendant’s name.
In the meantime, the defendant had gone to the restroom inside the bus terminal. After the defendant got back to the bus, a deputy boarded and asked to see the passengers’ tickets. After examining the defendant’s ticket and verifying that it matched the baggage claim ticket on the box, the | ^deputy asked him to exit the bus. When questioned about the box, the defendant first denied that it belonged to him and refused to produce identification. The deputy asked for permission to search the box. In response, the defendant stated that it was his uncle’s box which he was delivering for him. Between five to ten minutes later, after being advised that the deputies could either hold the box or detain the defendant in order to obtain a search warrant, the defendant consented to a search of the box. The defendant contends that he consented after being told by the deputies that they would delay the bus while procuring a search warrant. Once consent was given, Deputy McLamb opened the box and found taped packages containing marijuana and cocaine hidden beneath stereo speakers. The defendant was placed under arrest and given the Miranda warnings. He later admitted that the drugs were his and that he was planning to break them into smaller amounts to sell.
He was charged by a bill of information on May 20, 2002, with possession of over 200 grams of a Schedule II controlled dangerous substance, a violation of La. R.S. 40:967(F)(l)(b), and with possession with intent to distribute a Schedule I controlled dangerous substance in violation of La. R.S. 40:966(A)(1). A motion to suppress the evidence seized during the search of the bus and the cardboard box was denied by the trial court. Thereafter, the defendant entered a Crosby plea to a reduced charge of possession of more than 28 grams but less than 200 grams of cocaine in violation of La. R.S. 40:967(F)(l)(a). He received an agreed upon sentence of thirteen years at hard labor to be served concurrent with any other |asentence and to be served without benefit of probation, parole, or suspension of sentence for the first ten years. In addition, he was fined $50,000 plus court costs or 500 days in parish jail with credit for time served and concurrent with the hard labor sentence. This appeal of the denial of the motion to suppress followed.
DISCUSSION
At trial on a motion to suppress, the defendant bears the burden of proving the ground of his motion, but the state has the burden of proving the admissibility of any evidence seized without a warrant. La. C.Cr.P. art. 703(D). The defendant’s claim that the evidence against him was illegally *147 obtained is based on the protections against unreasonable searches and seizures provided in the Fourth Amendment of the U.S. Constitution and in La. Const, art. I, § 5 (1974), which also affords protection against “invasions of privacy.”
The defendant argues that the trial court erred in denying the motion to suppress because the evidence was obtained through an unconstitutional search and seizure. It is the defendant’s position that he was seized in violation of his constitutional rights when the deputies took control of the bus to conduct a search without either a warrant or any reasonable suspicion of illegal activity. Defendant likens the seizure or search by the deputies to an illegal police checkpoint and relies on State v. Vikesdal, 29,043 (La.App.2d Cir.1/31/97), 688 So.2d 685 to support his argument. The defendant also argues that he was not informed that he had a right to refuse consent to search.
|4In support of the conviction, the state argues that there was no illegal seizure or detainment of the bus passengers, that the canine sniff does not constitute an illegal search, and that the defendant consented to the search of the box which led to the discovery of the illegal drugs.
There are four identifiable actions by the deputies which must be examined to determine whether the drug evidence should have been suppressed. These actions include the manner in which the deputies gained access to the cargo area of the bus, the conduct of the canine sniff search, the detainment of the defendant after his bus ticket was found to match the baggage claim ticket on the suspect box, and the opening of the box to search its contents. We must determine whether the deputies’ actions in these four respects constituted either an unreasonable search or seizure.

Gaining Access to the Cargo Area of the Bus

The defendant relies on Vikesdal, supra, to support his argument that he was illegally seized when the deputies acted to gain access to the cargo area of the bus. In Vikesdal, supra, the court determined that the defendant had been seized in contravention of constitutional protections when the bus on which he was a passenger was stopped in front of a police station, surrounded by uniformed and armed officers, and boarded by the police chief, a drug dog, and its handler. The passengers were then ordered to remove their luggage from the upper rack and place it in the aisle, told to remain in their seats, and warned not to move or frighten the dog while it “worked” the aisle with its handler. The dog alerted on Vikesdal’s luggage. IsAfter Vikesdal refused consent to search, the police opened his luggage and found marijuana without having obtained a warrant.
Under these circumstances, the court had no trouble finding that Vikesdal was seized in the constitutional sense when the police took control of the bus and that his right to be free from unreasonable seizure of his person could not be waived by the bus company granting permission for random stops at the police station. The Vik-esdal decision was also based on the fact that the defendant was in possession of his luggage when the stop and subsequent drug sniff occurred and that this detainment of the defendant was without any “reasonable suspicion” that he was committing, had committed, or was about to commit an offense. See La.C.Cr.P. art. 215.1, which codifies the standard of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The court distinguished the situation wherein a person is detained for the purpose of subjecting property in his possession to a canine sniff *148 test when there is no reasonable suspicion to support the stop from a situation wherein property not in a person’s possession is exposed to a canine sniff test even in the absence of any articulable suspicion of criminal wrongdoing.[1]
| (¡Comparison of the circumstances in Vikesdal, supra, to the instant situation reveals that the two cases are more dissimilar than similar. In the instant case, the bus made its regularly scheduled stop at the bus terminal. It was not stopped by law enforcement authorities for the purpose of conducting a drug search as in Vikesdal, supra. While the bus was stopped at the terminal, Deputy McLamb obtained the permission of the bus driver to let the drug dog sniff the cargo compartment. This was done pursuant to a normal practice of the Caddo Parish Sheriffs office in conjunction with the bus terminal management. Deputy McLamb testified that buses usually remain at the terminal for thirty to forty-five minutes, that they are not detained, and that bus drivers will usually deny permission to search if the bus is running late. It is clear from the record that the drivers of the individual buses, not the deputies, decided whether to allow sniff searches. In addition, the passengers were not ordered to remain on the bus under police guard while the sniff search was conducted as was the case in Vikesdal, supra. In the instant case, there was no indication that the passenger compartment was searched or that the passengers were required to make luggage in their possession available for the sniff search. Moreover, the passengers were able to leave the bus while the sniff search of the cargo area was conducted. The defendant testified that he went inside the terminal to use the restroom at the time of the search.
A seizure, in the constitutional sense, occurs when the totality of the circumstances surrounding a person’s encounter with law enforcement authorities indicates that a reasonable person would not feel free to decline |7the officers’ requests or otherwise terminate the encounter. Florida v. Bostick, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); State v. Vikesdal, supra. An individual is “seized” under La. Const, art. I, § 5 when the individual is either actually stopped or when an actual stop of the individual is imminent. State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Tucker, 626 So.2d 707 (La.1993).
We do not find that the defendant was seized when the deputies acted to gain access to the cargo area of the bus. The bus was not stopped by law enforcement for the purpose of conducting a search. Rather, the deputies obtained permission of the bus driver for the limited purpose of conducting a sniff search of the cargo area beneath the bus while the bus was at its regularly scheduled stop. The defendant was free to leave the bus and did so. He was not “seized” or detained as shown by these facts. The permission granted by the terminal management and the bus driver authorizing the search of the cargo area did not infringe the defendant’s expectation of privacy. In fact, the defendant had no encounter with law enforce *149 ment at this point and was not subject to any actual or imminent stop.

Canine Sniff Search

Also at issue is whether the canine sniff search conducted in the cargo area of the bus was an unconstitutional search. A person has a privacy interest in the contents of his luggage that is protected by the Fourth Amendment of the U.S. Constitution. U.S. v. Chadwick, 433 U.S. 1, 97 SjCt.g 2476, 53 L.Ed.2d 538 (1977). However, the U.S. Supreme Court has also held that a “canine sniff’ by a narcotics detection dog which does not require the opening of luggage and which discloses only the presence or absence of narcotics is not a “search” within the meaning of the Fourth Amendment. U.S. v. Place, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). The drug detection dog sniffs the air space on the exterior of the luggage. There is no expectation of privacy in the air space outside of luggage. This reasoning has been followed in State v. Fikes, 616 So.2d 789 (La.App. 2d Cir.1993); State v. Arrington, 556 So.2d 263 (La.App. 2d Cir.1990); and State v. Thompson, 543 So.2d 1077 (La.App. 2d Cir.1989), writ denied, 551 So.2d 1335 (La.1989).
More recently, State v. Lee, 97-1470 (La.App. 3d Cir.6/17/98), 715 So.2d 582, writ denied, 98-1944 (La.11/20/98), 728 So.2d 1285, upheld the denial of a motion to suppress under similar circumstances to those in the instant case. A canine sniff of luggage in the cargo area of a bus while on its regular stop in Alexandria and with permission of the bus driver was not found to have been a search in the constitutional sense. The court found the defendant had no reasonable expectation of privacy in luggage stored in the cargo compartment and no expectation that such luggage could not be exposed to a narcotics dog with permission of the bus line management.
In the instant case, the bus was at its designated stop, the defendant’s box was under the control of the bus company, and the bus driver allowed the items in the cargo compartment to be sniffed by the drug dog. Applying the rationale of U.S. v. Place, supra, and State v. Lee, supra, to the instant |amatter, we do not find that the exposure of the luggage in the cargo compartment of the bus to the drug dog was a search within the constitutional context.

Post-Sniff Detainment

The initial contact between the defendant and the deputies did not occur until after the canine alerted to the presence of drugs in the cardboard box. The deputies then sought to identify the holder of the ticket matching the name on the baggage claim ticket from the box. This contact was in the nature of an investigatory stop under Terry v. Ohio, supra, which requires reasonable suspicion for detainment.
A law enforcement officer is permitted to stop a person whom he reasonably suspects is committing, has committed, or is about to commit an offense for the purpose of demanding his name, address, and an explanation of his actions. La.C.Cr.P. art. 215.1(A). The validity of an investigatory stop depends on whether the officer has knowledge of particular facts sufficient to warrant infringement upon the individual’s constitutional right to be left alone. State v. Allen, 95-1754 (La.9/5/96), 682 So.2d 713; State v. Neyrey, 383 So.2d 1222 (La.1979). In determining whether adequate articulable knowledge exists, courts must consider the totality of the circumstances and whether the detaining officer has a particularized and objective basis for suspecting that the individual has engaged in criminal activity. United States v. Cortez, 449 U.S. 411, 101 *150 S.Ct. 690, 66 L.Ed.2d 621 (1981); State v. Allen, supra; State v. Matthews, 366 So.2d 1348 (La.1978).
|inOnce the dog’s response alerted the deputies to the presence of drugs in the box, they had reasonable suspicion to suspect that the passenger to whom the box bélonged was engaged in the commission of an offense. Therefore, the deputies were permitted to make an investigatory stop of the defendant. Deputy McLamb testified that the baggage claim ticket on the box had the name of passenger Mark Alsay, so he asked his partner to locate that passenger. The defendant testified that after he boarded the bus, he was approached by a deputy who asked to see his ticket and then asked him to exit the bus. The defendant complied. In response to questioning, the defendant claimed that he was delivering the box for his uncle. The defendant refused to produce identification, but after his arrest he was found to have had identification hidden in his shoe.
The facts show that the actions of the deputies in detaining the defendant after the canine sniff alerted them to the presence of drugs in the box bearing his name and matching his ticket were at all times proper and within the ambit of constitutionally permissible conduct. The deputies had the requisite reasonable suspicion to conduct the investigatory stop.

Opening the Box

Although the record shows that the defendant gave his oral consent to allow the deputies to open the box that contained the illegal drugs, he now argues that his consent was not freely given. He claims he was forced to consent when the deputies told him they would delay the bus from leaving while they obtained a search warrant. The defendant testified that he was an “ordinary citizen” who did not know or understand his right to be free from 11 unreasonable searches and seizures and that he mistakenly consented to the search.
It is well settled that a warrantless search conducted pursuant to a valid consent is permitted by the Louisiana and United States constitutions. State v. Raheem, 464 So.2d 293 (La.1985); State v. Crews, 28,153 (La.App.2d Cir.5/8/96), 674 So.2d 1082. Oral consent to a search is valid. State v. Crews, supra.
While a valid consent search is a recognized exception to the warrant requirement, the burden is on the state to prove that the consent was given freely and voluntarily. State v. Kendrick, 35,233 (La.App.2d Cir.12/5/01), 804 So.2d 719, writ denied, 2002-0562 (La.11/1/02), 828 So.2d 563. Voluntariness is question of fact to be determined by the trial court under the facts and circumstances of each case; this determination is to be given great weight on appeal due to the trial court’s opportunity to observe witnesses and assess credibility. State v. Edwards, 434 So.2d 395 (La.1983); State v. Paggett, 28,843 (La.App.2d Cir.12/11/96), 684 So.2d 1072.
The trial court heard the testimony of Deputy McLamb and the defendant. Their accounts of what transpired were essentially the same, with the only difference being that the defendant claimed he was told the deputies would delay the bus while they obtained a warrant, and Deputy McLamb denied this. Only less than ten minutes elapsed from the time the deputies identified the defendant until he consented to the search. The | ^defendant admitted that the deputies did not threaten him or use physical force.
On cross examination, the defendant admitted that he had been reading cases on searches and seizures and that he had a *151 number of prior convictions. Therefore, the trial court in evaluating the defendant’s testimony knew that he was not the “ordinary” citizen he claimed to be, but rather at the time of detainment, he was a convicted felon who had been previously detained, interrogated, and arrested. The defendant gave his consent to open the box knowing that the drug dog had given a positive response to it.
After reviewing the record, we find no error in the trial court’s determination that the defendant’s consent to the search of the box was knowingly and voluntarily given. It is obvious that the defendant regretted giving consent once the drugs were found hidden beneath the stereo speakers, but the facts do not point to any actions by the deputies that should have caused even an ordinary citizen to feel threatened or forced to consent to the search.

Post-Conviction Relief

Review of the record indicates that the trial court did not advise the defendant at sentencing of the time period for applying for post-conviction relief. The Louisiana Supreme Court has held that La.C.Cr.P. art. 930.8(C), which requires the trial court to inform the defendant of the time period for filing an application for post-conviction relief, is supplicatory language which does not bestow an enforceable right on an individual defendant. \uState ex rel. Glover v. State, 93-2330 (La.9/5/95), 660 So.2d 1189, abrogated on other grounds in State ex rel Olivieri v. State, 2000-0172 (La.2/21/01), 779 So.2d 735. The trial court should have advised the defendant of this time period, and by way of this opinion, this court now advises the defendant that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if filed more than two years after the judgment of conviction and sentence has become final under the provisions of La.C.Cr.P. art. 914 or 922.1.
CONCLUSION
Finding no error in the trial court’s denial of the motion to suppress, we affirm the defendant’s conviction and sentence.
AFFIRMED.

. The court also based the Vikesdal decision on the expanded protection to be free from unreasonable "invasions of privacy” afforded under Louisiana’s Constitution. This expanded protection was the basis in State v. Church, 538 So.2d 993 (La.1989), for finding sobriety checkpoints unreasonable under the state constitution. However, Church was subsequently overruled by State v. Jackson, 2000-0015 (La.7/6/00), 764 So.2d 64, which found no discernable difference between the protections afforded under the United States Constitution and the Louisiana Constitution as such provisions apply to automobile checkpoints.